No. 89-127

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

FLOYD E. SCOTT,

          Plaintiff and Appellant,

   -vs-

E. I. DUPONT DE NEMOURS & CO.,
a corporation,

          Defendant and Respondent.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        R. P. Ryan; Ryan & McAllister, Billings, Montana

    For Respondent:

        Charles R. Cashmore; Crowley Law Firm, Billings,
Montana

Submitted on Briefs:  Nov. 21, 1989

Decided:   December 19, 1989

Filed:

FILED
'89 DEC 19 AM 9 39
ED SMITH, CLERK
MONTANA SUPREME COURT

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Floyd Scott brought this suit under a theory of strict liability, claiming that exposure to defendant's paint caused his respiratory disability. A jury in the District Court for the Thirteenth Judicial District, Yellowstone County, entered a verdict for defendant. Scott appeals. We affirm.

The issues are:

1. Did the trial court err in refusing to allow Scott to take the deposition of defense counsel?

2. Did the trial court err in excluding from evidence post-accident changes in defendant's warning labels?

3. Did the trial court err in allowing the opinion testimony of expert witness Bruce Held?

Scott was employed as a quality control inspector at Beall, Inc., of Billings, Montana. Beall manufactured tanks used for hauling liquid products. On January 28, 1981, Scott was working on top of a new tank in Beall's paint room, calibrating the tank for the liquid it would hold. At the same time, another worker, Eldridge, was spraying defendant's Imron polyurethane enamel paint onto the undercarriage of the tank.

Scott claimed that inhaling the fumes from the Imron paint caused his totally disabling respiratory problems. He also claimed that defendant failed to provide adequate warning on the Imron paint cans, because the Imron label recommended the use of a vapor/particulate mask, which did not provide a fresh air supply.

Defendant elicited testimony that Scott was not wearing any protective mask on the day he claims he was injured, and that Eldridge warned Scott that he should not be in the paint room while Eldridge was painting. It also presented evidence that Scott's respiratory problems are likely a result of his 40+ years of smoking.

The jury was provided with a special verdict form. The first question was, "Was the Defendant's product defective and unreasonably dangerous because of an inadequate warning?" The jury answered, "No," eliminating any further questions under the verdict form. The court entered judgment upon that verdict.

## I

Did the trial court err in refusing to allow Scott to take the deposition of defense counsel?

Eldridge, the painter, was deposed in July 1984. In his deposition, Eldridge stated that he had not previously spoken with either side's attorney. He also stated that he knew everyone in his area should have been wearing a protective mask while he was using Imron paint and that he warned Scott that he should not be there. Scott's counsel later discovered that defense counsel Cashmore had interviewed Eldridge two weeks prior to the deposition. Because Eldridge could not be located at the time of trial, his deposition was to be read into evidence.

In May 1988, several months prior to trial, Scott's counsel issued a notice that they planned to take Cashmore's deposition. The subject of the deposition would be the pre-deposition interview with Eldridge. Defendant applied for and was granted a protective order quashing the subpoena duces tecum issued in connection with the planned deposition. Scott argues on appeal that the court's refusal to allow the deposition was error.

While the lower court did not state its reasons for granting the protective order, counsel's arguments focus on the work product rule, Rule 26(b)(3), M.R.Civ.P. The defense argues that allowing Cashmore to be deposed would invade his mental impressions and work products, which are protected under the work product rule. Scott asserts that a deposition of Cashmore concerning his interview with Eldridge would fall within the exceptions to the work product rule or could be structured to protect against invasion of work product.

3

Defendant contends that the court arranged ample alternatives to a deposition of Cashmore. These included advising the jury that the interview had taken place, which directly impeached Eldridge's deposition statement that he had not talked with either side's attorney. The court also offered, in spite of their hearsay character, to allow into evidence two post-deposition written statements of Eldridge. These statements acknowledged the interview with Cashmore and contradicted other aspects of the deposition testimony. Further, witness Dvorak apparently would have testified that Eldridge later recanted his deposition testimony that he knew of the dangers of using Imron paint without fresh air masks. Scott chose not to offer Dvorak's testimony or the post-deposition written statements of Eldridge into evidence. The court did advise the jury that Cashmore's pre-deposition interview with Eldridge had taken place.

Rulings limiting discovery under Rule 26(c), M.R.Civ.P., are discretionary. Matter of Estate of Counts (1985), 217 Mont. 350, 355, 704 P.2d 1052, 1056. We conclude that in view of the alternate means of impeaching Eldridge offered to Scott in this case, the District Court did not abuse its discretion in refusing to allow Scott to take Cashmore's deposition.

II

Did the trial court err in excluding from evidence post-accident changes in defendant's warning labels?

Rule 407, M.R.Evid., provides:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another pur-

4

> pose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

At the time of the incident, the label on Imron paint suggested, in some circumstances, the use of vapor/particulate masks not containing fresh air supplies. Scott contends that, for purposes of impeachment, he should have been allowed to introduce evidence that after January 1981 defendant changed the label to require the use of fresh air respirators when Imron is being used.

Defendant's position is that the evidence regarding which mask was recommended is a red herring because Scott was wearing no mask whatsoever. We agree. Given that circumstance, we hold that the court did not err in excluding from evidence post-accident changes in the Imron paint labels.

### III

Did the trial court err in allowing the opinion testimony of expert witness Bruce Held?

Bruce Held, an industrial hygienist, testified for defendant. Scott argues that he should not have been allowed to testify because defendant failed to adequately answer Scott's discovery request for the substance of Held's expert opinion.

Rule 26(b)(4)(A), M.R.Civ.P., governs:

> (A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to sub-

> division (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.

Scott propounded interrogatories to defendant asking the names of experts who would testify at trial, the opinions of the experts, and the factual bases for the opinions. In answer to Scott's interrogatories, defendant provided the following information about Held:

> Bruce J. Held, Livermore, CA, Industrial hygiene, Toxicology, Respirators, Respirator testing and precautionary labeling.

> Bruce J. Held--Effectiveness of the vapor-particulate respirator (TC-23C) and requirements of proper respirator program required of employer.

In the pretrial order, Scott asked the court not to allow Held to testify. The court denied that request.

Held's testimony at trial was within the subject matter indicated in the answers to interrogatories. While the answers were not as complete as they should have been, Held was not a surprise witness. The above answers to interrogatories were made over three years prior to trial. Scott did not move to compel further answers. The time elapsed lessens the importance of these inadequate answers. We do not condone defendant's failure to provide full and complete answers to interrogatories. However, refusing to allow Held to testify would have been an extreme sanction, given that defendant's offense was incompleteness in its answers to interrogatories, not failure to answer. We hold that the lower court did not err in permitting Held to testify.

Affirmed.

_J. A. Turnage_
Chief Justice

We concur:

_John Conway Harrison_

_Diane G. Barz_

_John C. Sheehy_

_William E. Hunt Sr._

_R. C. McDonough_

_Fred J. Weber_
Justices

7