No. 98-453

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 287N

ROBERT FERGUSON,

Plaintiff and Appellant

v.

RONALD H. ULLMAN, M.D.,

a.k.a./d.b.a ULLMAN EYE CLINIC, P.C.,

Defendant
and
Respondent

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Carl A. Hatch, John C. Doubek, Small, Hatch, Doubek & Pyfer, Helena, Montana

No

For Respondent:

James E. Aiken, Jardine, Stephenson, Blewett & Weaver, Great Falls, Montana

_____

Submitted on Briefs: April 22, 1999

Decided: November 23, 1999

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

1. ¶ Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of non-citable cases issued by this Court.
2. ¶ Appellant Robert Ferguson (Ferguson) appeals a judgment entered on June 19, 1998, in favor of Ronald H. Ullman (Ullman) following a jury trial in the Eighth Judicial District Court, Cascade County. Specifically, Ferguson contends that the District Court erred when it denied his motion at trial to exclude or limit the testimony of Ullman's expert witness.
3. ¶ We affirm.

### Factual and Procedural History

4. ¶ This was a medical malpractice case filed against Ullman, an ophthalmologist, who

provided medical care to Ferguson for glaucoma-related afflictions, from July 1991 through spring of 1992. A complaint was filed by Ferguson on February 14, 1995. Ferguson alleged that he suffered permanent injuries resulting from a surgical procedure known as a trabeculectomy, performed by Ullman on Ferguson's left eye, which was intended to relieve the inherent pressure associated with glaucoma.

5. ¶ Pursuant to a District Court scheduling order, Ullman disclosed the name of his expert witness, a Dr. Jonathan Herschler (Herschler), along with Herschler's curriculum vitae, on February 13, 1997. Subsequently, Ullman timely answered Ferguson's interrogatories on April 3, 1997. Of particular relevance here, Interrogatory No. 7 requested the following information:

Please identify each person you expect to call as an expert witness at the trial of this matter, including the name, address and occupation or profession of each such expert.

(a) For each expert, state the subject matter on which that person is expected to testify;

(b) For each expert, state the substance of the facts as to which that person is expected to testify; and

(c) For each expert, state the substance of the opinion to which that person is expected to testify.

6. ¶ In response, Ullman stated that Herschler would testify "specifically . . . regarding the medical care, the laser trabeculoplasty, the trabeculectomy, and the operation to remove the clot, all as performed by Dr. Ullman."

7. ¶ Ullman further stated that it was Herschler's observation that Ferguson's condition presented "what is thought to be a congenital abnormality," and that such patients "experience lower success rates than do older glaucoma patients." Additionally, it was Herschler's opinion that "the care and treatment provided by [Ullman] fell within accepted standard of ophthalmologic care," and that it was not beneath the standard of care for Ullman to "attempt to control the pressure by the laser procedures and to perform half the procedure at one time."

8. ¶ Ullman further addressed Herschler's opinions by stating that Herschler would testify that the post-operation complications suffered by Ferguson were "recognized complications of the surgical procedure," identified these complications as the "blood clot, the leak, and the ptosis," and stated that "following surgery the aqueous humor is abnormal and may result in blocking the filtering process."

9. ¶ Ullman stated that Herschler's opinions were based on his review of the records collected and provided by the Montana Medical-Legal Panel, as well as his training, teaching, research, and practice experience. Furthermore, in response to Interrogatory No.

9, Ullman stated that the data or other information considered by Herschler included a "Copy of the claim before the Medical-Legal Panel, copy of the Medical-Legal Panel records, and copy of the Complaint."

10. ¶ Between April 3, 1997, and the date of trial, June 8, Ferguson did not file further interrogatories, or move the court for further discovery, with respect to Herschler.

11. ¶ Prior to Herschler taking the witness stand at trial on June 11, 1998, Ferguson orally moved the court to preclude Herschler from "testifying and giving any medical opinions regarding the medical care rendered by Dr. Ullman including all preoperative, operative, and postoperative activities" on the ground that the expert witness interrogatory disclosures were deficient in providing the substance of facts related to such testimony. The court denied the motion, and permitted Herschler to testify. During Herschler's testimony, counsel for Ferguson did not raise any objections.

12. ¶ The jury found for Ullman, and the District Court issued a judgment on June 19, 1998. From this judgment Ferguson now appeals.

## Standard of Review

13. ¶ Normally, the determination regarding the ability of a witness to testify is in the sound discretion of the trial court. *Montana Power Co. v. Wax* (1990), 244 Mont. 108, 112, 796 P.2d 565, 567 (citation omitted). The trail court's determination will not be disturbed on appeal unless the appellant shows an abuse of discretion. *Montana Power Co.*, 244 Mont. at 112, 796 P.2d at 567 (citation omitted).

14. ¶ The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *See C. Haydon Ltd. v. Montana Mining Properties, Inc.* (1997), 286 Mont. 138, 146, 951 P.2d 46, 51 (citation omitted). We will not substitute our judgment for the district court's unless it clearly abused its discretion. *See C. Haydon Ltd.*, 286 Mont. at 146, 951 P.2d at 51 (citation omitted).

## Discussion

15. ¶ The one issue presented by Ferguson on appeal is whether the District Court abused its discretion, thereby committing reversible error, when it denied Ferguson's motion to exclude or limit the testimony of Ullman's expert witness due to Ullman's failure to adequately respond to interrogatory requests. Specifically, Ferguson argues that Montana Rules of Civil Procedure 26(b)(4)(A)(i), as well as 26(e)(1)-(2), require full and complete answers to interrogatories and timely supplementation, and Ullman failed to comply with these rules with regards to his responses to Ferguson's expert witness inquiry.

16. ¶ Prior to trial, pursuant to Rule 26(b)(4)(A)(i), M.R.Civ.P., a party may require opposing counsel to provide four types of general information pertaining to an expert witness who

will be called to testify at trial: 1) identity of the expert witness, 2) subject matter of expected testimony, 3) substance of the facts and opinions of expected testimony, and 4) a summary of the grounds or basis for each opinion.

17. ¶ If a party specifically requests information in one of these four categories, a failure to adequately respond may justify a court's decision to exclude part or all of an expert's testimony. *See Rocky Mountain Enter., Inc. v. Pierce Flooring* (1997), 286 Mont. 282, 299, 951 P.2d 1326, 1336-37 (excluding expert testimony for failure to timely identify witnesses); *Billings Clinic v. Peat Marwick Main & Co*, 244 Mont. 324, 343, 797 P.2d 899, 911 (excluding expert testimony on subject that was not revealed in pretrial discovery); *Scott v. E.I. Dupont De Nemours & Co.* (1989), 240 Mont. 282, 286-87, 783 P.2d 938, 941 (suggesting expert testimony may be excluded for failure to provide substance of opinion); *Montana Power Co.*, 244 Mont. at 112, 796 P.2d at 567 (excluding expert testimony for failure to set forth basis of opinions).

18. ¶ Additionally, if a party's counsel finds the interrogatory responses insufficient, he has at his disposal a number of tactical remedies, including filing supplemental interrogatories and moving the court for further discovery pursuant to subsection (ii) of Rule 26(b)(4)(A), which may lead to compelling further answers or deposing the expert witness. Should opposing counsel frustrate this process, a party may again turn to the court for assistance in compelling compliance and issuing sanctions. *See generally* Rule 37, M.R. Civ.P. As a final measure, counsel at trial may hem in an expert's testimony by motion or objection that the testimony unfairly exceeds the scope of interrogatory responses, which, if denied or overruled, preserves that party's right to appeal such rulings. *See Kizer v. Semitool, Inc.* (1991), 251 Mont. 199, 207, 824 P.2d 229, 234 (stating that in "order to preserve an objection to the admission of evidence for purposes of appeal, the objecting party must make a timely objection or motion to strike and state its specific grounds").

19. ¶ The underlying policy of the particular discovery rules at issue here is to permit parties to formulate their positions on as much evidence as possible prior to trial and then prevent unfair surprises at trial. *See Workman v. McIntyre Const. Co.* (1980), 190 Mont. 5, 12, 617 P.2d 1281, 1285. In particular, we agree with other courts that malpractice actions involving a highly-skilled profession often place plaintiffs' attorneys in a position of vulnerability to surprise and "ambush." *See generally Nichols v. Tubb* (Miss. 1992), 609 So.2d 377, 384 (discussing the policies of Rule 26 in medical malpractice cases). Thus, if Ullman's medical expert was permitted to testify, over Ferguson's objection, as to areas entirely beyond the scope established by interrogatory responses, an abuse of discretion may have occurred. *See Billings Clinic*, 244 Mont. at 343, 797 P.2d at 911 (affirming district court's refusal to permit testimony of expert to exceed scope of pretrial discovery).

20. ¶ In a procedurally similar case identified in Ferguson's brief, we addressed whether the district court erred in allowing the opinion testimony of an expert for the defendant. *See*

*Scott*, 240 Mont. at 286-87, 783 P.2d at 941. The plaintiff, Scott, argued that the expert should not have been allowed to testify because the defendant failed to adequately answer Scott's discovery request for the substance of the expert's opinion. *Scott*, 240 Mont. at 286, 783 P.2d at 941.

21. ¶ Similar to Ferguson here, Scott "propounded interrogatories to the defendant asking the names of experts who would testify at trial, the opinions of the experts, and the factual bases for the opinions." *Scott*, 240 Mont. at 286, 783 P.2d at 941. In answer to Scott's interrogatories, Dupont merely provided the expert's name, and a rather brief summary of the substance of the expert's anticipated trial testimony, namely that the expert would testify regarding "Respirator testing and precautionary labeling" and the "Effectiveness of the vapor_particulate respirator . . . and requirements of proper respirator program required of employer." *Scott*, 240 Mont. at 286, 783 P.2d at 941. In affirming the district court's decision to permit the expert to testify, we concluded that:

[T]estimony at trial was within the subject matter indicated in the answers to interrogatories. While the answers were not as complete as they should have been, Held [the expert] was not a surprise witness. The above answers to interrogatories were made over three years prior to trial. Scott did not move to compel further answers. The time elapsed lessens the importance of these inadequate answers. We do not condone defendant's failure to provide full and complete answers to interrogatories. However, refusing to allow Held to testify would have been an extreme sanction, given that defendant's offense was incompleteness in its answers to interrogatories, not failure to answer.

*Scott*, 240 Mont. at 286-87, 783 P.2d at 941.

22. ¶ The foregoing stands in stark contrast to the case relied upon by Ferguson here. In *Montana Power Co. v Wax*, we concluded that the district court did not abuse its discretion in precluding expert witness testimony. In that case, Montana Power's pretrial interrogatories requested "the subject matter on which the expert is expected to testify, and . . . the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." *Montana Power Co.*, 244 Mont. at 111, 796 P.2d at 567. In response, counsel for Wax did not provide any indication of how the expert witnesses arrived at their opinions. We concluded that this failure would have severely limited opposing counsel's ability to cross_examine the witnesses, and it was not an abuse of the district court's discretion to preclude the expert's testimony. *Montana Power Co.*, 244 Mont. at 112, 796 P.2d at 567.

23. ¶ As a preliminary matter, before applying the foregoing to the case *sub judice*, we are inclined to agree with Ferguson that exhausting the pretrial discovery process, including taking the deposition of expert witnesses, is not required under these rules. Nevertheless,

such tactical decisions must be factored into our consideration of whether Ferguson was unfairly taken by surprise or disadvantaged at trial due to Ullman's allegedly deficient interrogatory responses, and consequently whether the District Court abused its discretion in denying Ferguson's motion. *See*, *e.g.*, *Birnbaum v. Alliance of American Insurers* (Tex. App. 1999), 994 S.W.2d 766, 781-82 (concluding that the trail court did not abuse its discretion in allowing testimony of expert witness where interrogatory answers, although "unresponsive," provided notice of anticipated testimony and party was afforded opportunity to depose witness prior to trial). Likewise, we must also factor in the extent of time afforded to Ferguson between receiving the interrogatory responses and going to trial. *See Scott*, 240 Mont. at 286-87, 783 P.2d at 941 (stating that the elapse of time "lessens the importance of inadequate answers," where interrogatories were answered three years prior to trial). Here, counsel for Ferguson had well over one year--due to several postponements--and a number of pretrial tools with which to flush out the anticipated testimony of Ullman's expert witness based on Ullman's fairly broad responses to the interrogatories.

24. ¶ With these factors in mind, we now turn to the substance of Ferguson's allegations. Ferguson claims that Ullman's response to Interrogatory No. 7 did not "provide one single, solitary fact relating to the preoperative, operative, and postoperative care of Respondent, all of which was at issue in this case." Ferguson argues that such facts should have been provided in response to Interrogatory No. 7(b): "For each expert, state the *substance of the facts* as to which that person is expected to testify" (emphasis added). Our review of Ullman's interrogatory responses, however, leads us to conclude that he provided far more factual details concerning Herschler's anticipated testimony than those found in *Scott*, and in no sense was he unresponsive to a particular query as was the case in *Montana Power*.

25. ¶ For example, Ullman stated that Herschler would testify "specifically . . . regarding the medical care, the laser trabeculoplasty, the trabeculectomy, and the operation to remove the clot, all as performed by Dr. Ullman." Such testimony would be based on Herschler's review of the medical records collected and provided by the Montana Medical-Legal Panel. The interrogatory responses also provided Herschler's general factual observations as to the nature of Ferguson's glaucoma condition and the post-operative complications that Ullman faced.

26. ¶ To illustrate the prejudice that resulted from the District Court's denial of his motion, Ferguson contends that Herschler's lengthy testimony under direct examination regarding "visual field tests" was permitted although "there is not one single, solitary reference to a visual field in Respondent's answer to Interrogatory No. 7, under (a), (b), or (c)." The trial transcript reveals, however, that such tests, which had already been discussed at some length during prior testimony by Ullman himself, are in fact part of the routine eye examination process for glaucoma patients. As such, the tests were included in the

medical records that Ullman expressly stated Herschler would review in arriving at his opinions, and obviously were part of the "medical care" that Ullman represented would be included in Herschler's testimony. Furthermore, Herschler's testimony regarding these tests did not result in any startling revelations. To the contrary, most of this testimony merely explained for the jury the purpose of the tests, and to what extent Ullman's use of the tests aligned with the standard of care within the profession.

27. ¶ The same holds true for other specific portions of Herschler's testimony addressed in Ferguson's brief. All such testimony was directly related to Herschler's disclosed opinions regarding the standard of care as applied to Ullman's treatment before, during, and after the surgery. We therefore conclude that such specific "undisclosed facts" as the "examination of the optic nerve," "the significance of a specific pressure reading," a "cup to disc ratio figure," and discussion of various medications used prior to surgery were clearly derived from the medical records at both parties' disposal, and fall within the scope of Ullman's interrogatory responses. Consequently, Ferguson's argument that he was unfairly surprised or placed at a disadvantage by Herschler's testimony is without merit.

28. ¶ Upon further review of the trial transcripts, we note that had counsel for Ferguson believed Herschler's testimony truly exceeded the scope of the medical records, he failed to object at any time during Herschler's direct testimony. Likewise, his motion at trial failed to raise the issue of Ullman's duty to supplement the interrogatory responses pursuant to Rule 26(e), M.R.Civ.P. In sum, we conclude that Herschler's testimony did not introduce any unrelated issues or new lines of defense that necessarily would have diminished Ferguson's ability to cross-examine Herschler or prepare rebuttal evidence. We therefore conclude that Ullman's responses to Interrogatory No. 7 substantially complied with Rule 26 of the Montana Rules of Civil Procedure and the District Court did not abuse its discretion in denying Ferguson's motion to exclude the testimony of Ullman's expert witness.

29. ¶ Finally, we also conclude that the related, minor issue of whether Ullman's interrogatory responses failed to disclose prior cases on which Herschler served as an expert is without merit as well. At trial, counsel for Ferguson specifically asked Herschler when was the "last time you *testified* in court," to which Herschler responded "It was in Oregon. It was a *number* of years ago." Counsel for Ferguson then proceeded to ask Herschler about other states Herschler had testified in during the "last *ten* years." In Interrogatory request No. 9, Ferguson requested a list of other lawsuits in which Herschler had been involved as an expert within the "preceding *four* years." The three cases listed by Ullman, none of which were in Oregon, show that Herschler served only as a consultant, and in one case a "prospective witness." Based on the foregoing, we conclude that there is absolutely no indication that Ullman did not precisely and completely answer the requests for Herschler's prior experience as an expert witness.

30. ¶ Accordingly, the judgment of the district court is affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER