No. 98-191

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 132

294 Mont. 501

982 P.2d 464

GARY W. BRAMBLE,

Petitioner and Appellant,

v.

STATE OF MONTANA, DEPARTMENT

OF JUSTICE, MOTOR VEHICLE DIVISION,

Respondent and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gary R. Thomas, Thomas Law Office; Red Lodge, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Micheal S. Wellenstein,

Assistant Attorney General; Helena, Montana

V. Joe Leckie, Laurel City Attorney; Billings, Montana

Submitted on Briefs: December 30, 1998

Decided: June 14, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1. On November 13, 1997, Gary Bramble filed a petition in the Thirteenth Judicial District Court, Yellowstone County, to challenge the seizure and suspension of his Montana driver's license for refusing to submit to a preliminary breath test pursuant to § 61-8-409, MCA, and refusing to submit to a breath test at a detention facility pursuant to § 61-8-402, MCA, during a DUI investigation and arrest. On January 30, 1998, Bramble filed a motion in limine to exclude the results of the Horizontal Gaze Nystagmus test (HGN), and the standard field sobriety tests administered to him. The District Court denied the motion. At the hearing on the petition, Bramble objected to evidence of the standard field sobriety tests for lack of foundation and also on the basis that they constitute searches requiring probable cause or a particularized suspicion. The District Court overruled both objections. The District Court denied Bramble's petition and suspended his driver's license for six months. We reverse.

¶2. The issues raised on appeal are as follows:

¶3. 1. Did the District Court err when it denied Bramble's motion in limine regarding the admission of the HGN field sobriety test results?

¶4. 2. Did the District Court err when it concluded that the arresting officer had the necessary particularized suspicion to administer the standard field sobriety tests after the DUI investigatory stop?

¶5. 3. Did the District Court err when it denied Bramble's petition to reinstate his driver's license because of his refusal to submit to a preliminary breath test prior to

his arrest?

FACTUAL BACKGROUND

**¶6. Shortly after midnight on October 12, 1997, the Laurel City Police received a citizen's report of a suspected drunk driver. The report stated that a white Dodge pickup on Interstate 90 heading west toward Laurel and taking the "refinery exit" might be driven by a drunk driver. The caller was anonymous and provided no information to form a basis for this conclusion.**

**¶7. After receiving the report, Reserve Laurel City Police Officer Mike Kirschenmann observed the vehicle and reported to Laurel City Police officers that the pickup was driving at sixty miles per hour in a thirty-five mile per hour construction zone. The officers then followed the vehicle. One of the officers testified at the hearing that the vehicle moved over the centerline of the highway once. However, this area of the highway was under construction with no clear centerline and had left turn lanes at that location. After following the vehicle for several hundred yards, the officer activated his overhead lights and stopped the vehicle.**

**¶8. The officer testified that the vehicle did not slow down when it drove off to the side of the highway and that it stopped abruptly. The officer approached the vehicle and asked Gary Bramble, the driver, if he had been drinking. Bramble stated that he had not. At the hearing on Bramble's petition, Bramble said that he had consumed two small glasses of wine at least four hours prior to the stop. The officer testified he did not smell the odor of alcohol on Bramble's breath but decided to administer standard field sobriety tests anyhow. After a satisfactory check of Bramble's driver's license and vehicle registration, the officer informed Bramble that he would have to perform the field sobriety tests. The officer admitted at the hearing that he did not observe any indications that Bramble may have been under the influence of alcohol, such as an odor of alcohol, blood shot or glassy eyes, slurred speech, unsteady gait, lack of balance or coordination, inability to understand instructions, or fumbling with his driver's license, insurance, or vehicle registration. The officer testified that the only reason he required the tests was because Bramble "cross[ed] over the centerline," had been speeding, had failed to slow as he left the highway, stopped quickly, and because of the anonymous citizen's report.**

**¶9. Bramble maintains that he did not consent to performing the field sobriety tests**

and performed them only because the officer told him it was necessary to do so.

¶10. Three field sobriety tests were administered to Bramble. The first was the Horizontal Gaze Nystagmus test (HGN). The arresting officer was certified to administer the test, but on cross-examination at the hearing admitted he did not know the scientific explanation for how the test works. Over objections for lack of foundation, the test was admitted, indicating that Bramble was intoxicated.

¶11. The second field sobriety test administered to Bramble was the one-legged stand. Bramble claimed that there was no level spot on the highway to conduct the test. He argued that this test, as well as the "walk and turn" test were searches requiring probable cause or a particularized suspicion, and the State had established neither. The officer testified that Bramble could not complete the test, which indicated that Bramble was intoxicated.

¶12. The third field sobriety test administered to Bramble was a walk-and-turn test. The arresting officer testified that Bramble stepped off the "line" once and stopped once which indicated that Bramble was under the influence of alcohol. Bramble claimed that there was no line for him to follow when he was asked to walk a straight line.

¶13. The officer then asked Bramble to take a preliminary breath test which Bramble refused. The officer then placed Bramble under arrest and took him to the Laurel police station for processing. At the station, Bramble again refused to take a breath test.

## ISSUE 1

¶14. Did the District Court err when it denied Bramble's motion in limine regarding the admission of the HGN field sobriety test results?

¶15. Bramble filed a motion in limine to exclude the results of the field sobriety tests he performed prior to his refusal to take the preliminary breath test and prior to his arrest. Specifically, Bramble argued that the State did not lay the proper foundation for the admission of evidence concerning the HGN field sobriety test. He also argued that the field sobriety tests were searches requiring the prerequisite of probable cause, or at least a particularized suspicion. He claims that neither were present here.

The District Court denied Bramble's motion in limine.

¶16. This Court reviews the grant or denial of a motion in limine for an abuse of discretion. *See Hulse v. Montana Dep't of Justice*, 1998 MT 108, ¶ 15, 289 Mont. 1, ¶ 15, 961 P.2d 75, ¶ 15. In *Hulse* we stated that "the authority to grant or deny a motion in limine 'rests in the inherent power of the court to admit or exclude evidence and to take such precautions as are necessary to afford a fair trial for all parties.'" *Hulse*, ¶ 15.

¶17. Bramble argues that this case is controlled by our decisions in *Hulse* and *State v. Steinmetz*, 1998 MT 114, 288 Mont. 527, 961 P.2d. 95. We note that the District Court did not have the benefit of either decision at the time it denied Bramble's petition. Relying on these recent pronouncements, Bramble maintains that the District Court's decision to admit the results of the HGN test was in error because the officer who administered the test testified that he could not explain the scientific basis for why the consumption of alcohol causes the gaze nystagmus.

¶18. In *Hulse*, we addressed the foundation necessary for the admission of HGN test results. We stated that before an arresting officer may testify to HGN test results, the evidence must show that the arresting officer was properly trained to administer the HGN test and that he or she administered it in accordance with that training. *See Hulse*, ¶ 70. We also required the introduction of evidence regarding the underlying scientific basis for the HGN test. *See Hulse*, ¶ 70. We concluded in *Hulse* that although the arresting officer was trained to administer the HGN test, and administered the test according to his training,

nothing in the evidence establishes that Officer Kennedy had special training or education nor adequate knowledge qualifying him as an expert to explain the correlation between alcohol consumption and nystagmus, the underlying scientific basis of the HGN test. Accordingly, we conclude there was insufficient foundation for the admission of evidence concerning the HGN test and the District Court abused its discretion when it summarily denied Hulse's motion in limine and allowed Officer Kennedy to testify as to Hulse's HGN test results.

*Hulse, ¶ 72.*

¶19. The State concedes on appeal that the foundational requirements in *Hulse* were not met in this case. While the record reveals that the officer was trained to administer the HGN test, and that he administered it in accordance with his training, the record also shows that no evidence was introduced regarding the underlying scientific basis of the HGN test. Accordingly, we conclude that the District Court did abuse its discretion when it allowed testimony and evidence regarding Bramble's HGN test results.

ISSUE 2

¶20. Did the District Court err when it concluded that the arresting officer had the necessary particularized suspicion to administer the standard field sobriety tests after the DUI investigatory stop?

¶21. The standard of review of a district court s conclusions of law is whether the court s interpretation of the law is correct. *See Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686 (citing *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04). *See also Kreger v. Francis* (1995), 271 Mont. 444, 447, 898 P.2d 672, 674.

¶22. As we previously stated, at the time the District Court denied Bramble's motion in limine to exclude evidence of the standard field sobriety tests, we had not yet rendered our decisions in *Hulse* and *Steinmetz* which held that field sobriety tests constitute a search. As a result, relying on *State v. Purdie* (1984), 209 Mont. 352, 680 P.2d 576, overruled by *Hulse v. Montana Dep't of Justice*, 1998 MT 108, 289 Mont. 1, 961 P.2d 75, the District Court concluded that field sobriety tests are not searches.

¶23. In *Hulse*, we held that field sobriety tests are searches and, therefore, must be based upon a particularized suspicion to be constitutionally permissible. *Hulse*, ¶¶ 32-33. To show a particularized suspicion, the State must establish (1) objective data from which an experienced officer had sufficient cause to conduct the field sobriety tests, and (2) a resulting suspicion that the person to be so tested has been driving under the influence of alcohol or drugs. *Hulse*, ¶ 12. Bramble argues that in this case there was no erratic driving such as there was in *Hulse*. He claims that the "over and back" movement of his vehicle over the center line, his speeding, and the report from the unreliable, unknown informer, is insufficient objective data to establish the particularized suspicion required to administer the standard field sobriety tests.

Bramble disputes that he crossed the centerline, and notes that at the location where he was driving there was no clear centerline because of left turn lanes and highway construction. Once stopped, Bramble notes that none of the officers observed any signs indicating that he was possibly under the influence of alcohol.

¶24. In *Hulse*, we discussed the kind of driving which might alone raise a particularized suspicion and justify both an investigative traffic stop, and the administration of field sobriety tests. We noted in particular; driving all over the road, crossing the center line and the fog line, weaving in and out of traffic, and breaking for green lights. We agree with Bramble that such erratic driving is not present in this case, especially when considering that the center line over which Bramble allegedly crossed was unmarked. Thus, while Bramble's speeding provided a particularized suspicion to justify the initial investigative stop, there were no other aspects of his driving, behavior, or physical symptoms that provided a particularized suspicion that he was driving under the influence of alcohol. Accordingly, we conclude that because Bramble's driving did not approximate the kind of driving described in *Hulse*, the arresting officer did not have the requisite particularized suspicion to administer the standard field sobriety tests.

## ISSUE 3

¶25. Did the District Court err when it denied Bramble's petition to reinstate his driver's license because of his refusal to submit to a preliminary breath test prior to his arrest?

¶26. Once again, we review a district court s conclusions of law to determine whether the court s interpretation of the law is correct. *See Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

¶27. In order for a refusal to take a preliminary breath test to result in the suspension or revocation of a motorist's driver's license, the arresting officer must have had a particularized suspicion that the motorist was driving in actual physical control of a motor vehicle while under the influence of alcohol. *See* § 61-8-409(5), MCA. Bramble asserts that the arresting officer lacked this particularized suspicion. According to Bramble, without the admission of the results of the HGN and other field sobriety tests, a finding of a particularized suspicion to support the request for a preliminary breath test becomes problematic for the State. He claims that while

there was a particularized suspicion for the initial stop, there was not a particularized suspicion to require Bramble to get out of his vehicle and perform standard field sobriety tests and the preliminary breath test. Because of this, Bramble argues, the District Court erred when it ordered that Bramble's driver's license be suspended for six months.

¶28. The State maintains that after Bramble failed the field sobriety tests, the officer then asked him to take a preliminary breath test, which Bramble refused. As a result of his refusal, his license was suspended. The State concedes that the HGN test should not have been admitted but argues that there was clearly sufficient evidence for the officer to have a particularized suspicion that Bramble was under the influence of alcohol based upon the anonymous citizen report, Bramble's speeding, his crossing the centerline, his abrupt stop, and his failure of both the one-legged stand test and the walk-and-turn test.

¶29. As we explained above, because the arresting officer lacked a particularized suspicion to administer the standard field sobriety tests, he likewise lacked a particularized suspicion to request the preliminary breath test. Therefore, Bramble's refusal to take the preliminary breath test should not have resulted in the suspension of his driver's license.

¶30. Accordingly, we reverse the judgment of the District Court.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

No

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER