No. 02-519

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 20

KRISTIN HENRICKSEN, individually and a parent
and guardian of HUNTER HENRICKSEN, a minor,

Plaintiff, Respondent and Cross-Appellant,

v.

STATE OF MONTANA and MONTANA
STATE UNIVERSITY,

Defendants and Appellants.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 96-408,
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Steven J. Harman, Brown Law Firm, Billings, Montana

Honorable Mike McGrath, Attorney General; Katherine J. Orr,
Assistant Attorney General, Helena, Montana

For Respondent:

Monte D. Beck, Beck, Richardson & Amsden, PLLC, Bozeman,
Montana

Submitted on Briefs: June 5, 2003

Decided: January 28, 2004

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    The State of Montana and Montana State University (collectively the State) appeal multiple District Court rulings detailed below. Kristin Henricksen (Kristin) cross-appeals. We affirm in part and reverse in part.

¶2    The issues on appeal are as follows:

¶3    1.    Whether the District Court erred in granting partial summary judgment on the issue of liability?

¶4    2.    Whether the District Court erred in bifurcating liability and damages and in bifurcating Kristin's and Hunter's damages?

¶5    3.    Whether the District Court erred in denying the production of (1) Kristin's medical and mental health records; and (2) her financial documents, school transcripts, and personnel records?

¶6    4.    Whether the District Court erred in not allowing the State to depose Hunter or to call him as a witness?

¶7    5.    Whether the District Court erred in prohibiting the State from conducting an IME and in excluding the State's expert witness?

¶8    6.    Whether the District Court erred in excluding evidence of (1) stressors in Kristin's life unrelated to the accident and counseling services Kristin received prior to Hunter's accident; and (2) a prior fall at the MSU library?

¶9    7.    Whether the District Court erred in its jury instructions for the claims of emotional distress and loss of established course of life?

2

¶10 8. Whether the District Court erred in excluding the videotapes of Hunter?

¶11 9. Whether the District Court erred in not dismissing jurors for cause?

Factual and Procedural Background

¶12 On November 2, 1995, Kristin and her three-year-old son Hunter were at the Montana State University (MSU) library. Hunter slipped between the stairway balusters of a second story open stairwell and fell approximately twenty feet to the concrete floor below, landing on the left side of his head. Within hours of Hunter's fall, Kristin learned that another child had fallen through the same stairway weeks earlier. As a result of this fall, Hunter suffered three skull fractures. Since the fall, medical tests have revealed that an area of his brain tissue about the size of a golf ball has atrophied.

¶13 On December 17, 1996, Kristin individually, and as parent of Hunter, filed a complaint against the State. Kristin's claim was based on emotional distress, loss of consortium, and post-traumatic stress disorder, all related to Hunter's fall. Hunter's claim was for medical expenses related to his injuries, loss of enjoyment of lifestyle, and pain and suffering.

¶14 On February 23, 1999, the District Court granted partial summary judgment against the State, regarding duty and breach. The court bifurcated the issues of liability and damages and also the issues of Kristin's and Hunter's damages.

¶15 The court granted motions in limine excluding the following evidence: lack of prior accidents at the library; evidence that the stairway complied with the Uniform Building Code in effect at the time the stairway was constructed; evidence of a child's fall weeks before

3

Hunter's fall from the same stairway; and evidence concerning Kristin's divorce and prior unrelated counseling. The court also granted a motion to strike Dr. David Price's testimony and limit Dr. Paul Bach's testimony (both expert witnesses for the State). After conducting an *in camera* review of Kristin's medical records, the court denied a motion to compel production of Kristin's health care records from before and after Hunter's fall. The court also denied the motion to compel production of all Kristin's financial documents. The State requested, before the discovery deadline, an independent medical examination of Kristin which the District Court at first granted but later denied after reconsideration.

¶16    At the start of the trial, beginning on April 15, 2002, the State challenged several jurors for cause because they had read a newspaper article regarding Hunter's accident that mentioned the prior fall. All but one of these challenges were denied after the jurors were questioned about potential bias. After a five-day trial, a jury rendered a verdict against the State. The verdict amount was reduced by 20 percent based on Kristin's comparative negligence.

¶17    The State has appealed numerous issues, delineated above. In the event that a new trial is ordered, Kristin cross-appealed the preclusion of the evidence regarding the prior fall. We affirm in part and reverse in part.

## Discussion

¶18    Issue 1: Whether the District Court erred in granting partial summary judgment on the issue of liability?

4

¶19     We review a district court's grant of summary judgment *de novo*, applying the same criteria as the district court, based on Rule 56, M.R.Civ.P. *Wiley v. City of Glendive* (1995), 272 Mont. 213, 216, 900 P.2d 310, 312.  The party moving for summary judgment must demonstrate that no genuine issues of material fact exist. *Wiley*, 272 Mont. at 216, 900 P.2d at 312.  If this is demonstrated, "the burden then shifts to the party opposing the motion to establish otherwise."  *Wiley*, 272 Mont. at 216, 900 P.2d at 312.  Although negligence actions involve questions of fact and are ordinarily not susceptible to summary judgment, when reasonable minds cannot differ, questions of fact can be determined as a matter of law. *Wiley*, 272 Mont. at 216, 900 P.2d at 312.

¶20     A negligence action has four elements:  (1) duty; (2) breach of duty; (3) causation; and (4) damages. *Wiley*, 272 Mont. at 217, 900 P.2d at 312.  In this case, the District Court granted summary judgment on the duty and breach of duty elements.  Causation and damages were left for determination at trial.

¶21     The question of whether the State owed a legal duty to Kristin and Hunter and the scope of this duty are questions of law. *Webb v. T.D.* (1997), 287 Mont. 68, 72, 951 P.2d 1008, 1011.  "The existence of a duty of care depends upon the foreseeability of the risk and upon a weighing of policy consideration for and against the imposition of liability." *Estate of Strever v. Cline* (1996), 278 Mont. 165, 173, 924 P.2d 666, 670.  The policy considerations weighed to determine whether to impose a duty include:

> (1) the moral blame attached to the defendant's conduct; (2) the desire to prevent future harm; (3) the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with

resulting liability for breach; and (4) the availability, cost and prevalence of insurance for the involved.

*Estate of Strever*, 278 Mont. at 173, 924 P.2d at 670.

¶22 A duty of care is breached, as a matter of law, if a defect or dangerous condition exists of a sufficient magnitude to cause a reasonable person to conclude that an accident is likely to occur because of the condition and the person or entity exercising control over the condition had notice of the defect. *Wiley*, 272 Mont. at 218, 900 P.2d at 313. "[W]hen the State has notice of a defect and opportunity to act, it has the duty to cure, remove, or warn of that defect." *Wiley*, 272 Mont. at 217, 900 P.2d at 313.

¶23 After reviewing the record before us, we conclude that the State owed a duty of ordinary care to prevent children from falling through the balusters in the MSU library. Section 27-1-701, MCA. As the State has a duty to maintain sidewalks and highways in a safe condition for ordinary and public use, *Wiley*, 272 Mont. at 217, 900 P.2d at 312, so too does it have a duty to maintain the balcony and staircase at the MSU library in a safe condition for ordinary and public use. The State knew the distance between the balusters of the stairway was a gaping eleven to twelve inches. This alone was sufficient to make Hunter's fall foreseeable. Additionally, the State knew that approximately two weeks earlier another child fell through the balusters at the library. After this first accident, the dangerous condition of the balusters could not be ignored. Yet the State did not act.

¶24 Policy considerations support the imposition of a duty upon the State. The baluster spacing which led to the accident was in a state library open to the public. Society has a

6

legitimate interest in prevention of harm to all library users because the library should be safe for all users and their children. The State had a minimal burden placed upon it to remedy the situation, as shown by the placement of chickenwire in front of the balusters within twenty-four hours of Hunter's fall. Lastly, the public suffers no negative cost if the State is held to a duty of care because any liability is covered by the State's insurance.

¶25 The State breached its duty of ordinary care when it failed to take any remedial action following the first fall. The State had a duty to maintain the stairway in a reasonably safe condition and to take measures to prevent small children from falling through the balusters. The State had notice of the defect caused by the unsafe distance between the stairway balusters when the first fall occurred. "When defects are present the State's duty to cure or remove the same, or give warning thereof begins when it has notice of the same and opportunity to act." *Buck v. State* (1986), 222 Mont. 423, 430, 723 P.2d 210, 214 (overruled on other grounds). Here, despite notice, the State did not act to cure, remove, or warn of the stairway defect.

¶26 The State contends that because it had a relatively accident-free history at the library and the building was grand-fathered in under an older version of the Uniform Building Code there are genuine issues of material fact which make summary judgment inappropriate. However, foreseeability is determined at the time the event occurred, irrespective of a long history free from accidents. *Jackson v. State,* 1998 MT 46, ¶¶ 56-58, 287 Mont. 473, ¶¶ 56-58, 956 P.2d 35, ¶¶ 56-58.

¶27 "Property owners owe a duty of ordinary care to keep the premises reasonably safe and to warn people of any hidden or lurking dangers." *Welton v. Lucas* (1997), 283 Mont. 202, 207, 940 P.2d 112, 115. This duty is not abrogated by either a long or relatively accident-free history, *Allis-Chalmers Corp. v. Occupational Safety & Health Review Com.* (7th Cir. 1976), 542 F.2d 27, 31 (an employer's accident-free record may be considered in determining the gravity of a safety violation but the record is not dispositive); *Faultless Div., Bliss & Laughlin Indus., Inc. v. Secretary of Labor* (7th Cir. 1982), 674 F.2d 1177, 1184 (a history free from accidents is not dispositive regarding whether a safety regulation violation occurred), or having a building grand-fathered in under older building codes, *Moffatt v. University of Montana* (1992), 254 Mont. 285, 837 P.2d 401 (compliance of stairs with building code does not prove conclusively that property owner properly maintained its premises); *Hull v. Greater Cleveland Reg'l Transit Auth.* (Ohio App. 1987), LEXIS 7574, 2 (complying with building codes does not establish that one does not breach the duty of ordinary care). Because we agree with the District Court that no material issues of fact exist regarding the State's duty and breach of duty, we affirm the grant of partial summary judgment on these issues. The remaining issues are discussed in regards to damages only.

¶28 Issue 2: Whether the District Court erred in bifurcating liability and damages and in bifurcating Kristin's and Hunter's damages?

¶29 A court may bifurcate claims in order to avoid the danger of prejudice or for court convenience. Rule 42(b), M.R.Civ.P. The decision whether to bifurcate claims pursuant to this rule is a matter left to the broad discretion of the district court. *Malta Public School*

*Dist. v. 17th Jud. Dist.* (1997), 283 Mont. 46, 50, 938 P.2d 1335, 1338. This Court reviews a decision to bifurcate for abuse of discretion. *Malta Pub. School Dist.*, 283 Mont. at 51, 938 P.2d at 1338. "The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Jarvenpaa v. Glacier Electric Co-op.,* 1998 MT 306, ¶ 13, 292 Mont. 118, ¶ 13, 970 P.2d 84, ¶ 13 (citation omitted). It is not appropriate to bifurcate issues when the issues are so intertwined that if they are separated it will create confusion and uncertainty, *Miller v. Fairchild Industries, Inc.* (9th Cir. 1989), 885 F.2d 498, 511, or needless and endless litigation, *State ex rel. Fitzgerald v. Dist. Court* (1985), 217 Mont. 106, 118, 703 P.2d 148, 156.

¶30 In *State ex rel. Fitzgerald v. District Court*, we determined that bifurcation was not appropriate because the issue of exemplary damages was so interwoven with proving negligence and malice or oppression that to have separate trials would lead to extended and needless litigation. *State ex rel. Fitzgerald,* 217 Mont. at 118, 703 P.2d at 156.

¶31 In the instant case, the court ordered bifurcation of liability and damages as well as bifurcation of Kristin's and Hunter's damages. The court did this both for court convenience and to avoid the danger of prejudice. With respect to bifurcation of liability and damages, duplication of evidence would be minimal because the evidence proving liability and that proving damages is fundamentally different. They are not so interwoven that bifurcation would prevent a fair trial or lead to endless litigation. Bifurcation of liability from damages is appropriate because witnesses (for the liability phase) could be lost or their memories

clouded if they have to wait to testify until the full extent of Hunter's damages is known. The trial court also stated that a finding of liability may help speed the judicial process by enhancing the possibility of a settlement.

¶32 Bifurcation of Kristin's and Hunter's damages is appropriate because Kristin's damages are currently assessable. Because of Hunter's young age, the full extent of his damages will not be known for several years. Forcing Kristin to wait until the time when Hunter's damages are fully assessable or forcing both issues to be tried now, before Hunter's damages are fully known, would be prejudicial. Although the same facts surround the underlying accident causing both Kristin's and Hunter's damages, the claims are fundamentally different. Although slight overlap of witnesses may occur between their claims, the witnesses and evidence will not be extensively duplicated. Different witnesses will and have provided testimony regarding the impact the accident had on Kristin and on Hunter.

¶33 Based on the foregoing, we conclude that the District Court did not abuse its discretion by ordering bifurcation. Unlike the *Fitzgerald* decision, judicial economy in this case does not call for a unified trial. The District Court did not act arbitrarily without employment of conscientious judgment or exceed the bounds of reason. Bifurcation was appropriate both for court convenience and to prevent prejudice resulting in substantial injustice. We affirm.

¶34 Issue 3: Whether the District Court erred in denying the production of (1) Kristin's medical and mental health records; and (2) her financial documents, school transcripts, and personnel records?

Medical and Mental Health Records

¶35    "The District Court has inherent discretionary power to control discovery based on its authority to control trial administration." *Anderson v. Werner Enterprises, Inc.*, 1998 MT 333, ¶ 13, 292 Mont. 284, ¶ 13, 972 P.2d 806, ¶ 13.  We review a district court's rulings on discovery motions for an abuse of discretion.  *Anderson*, ¶ 13.  The party claiming error in the district court's discovery rulings must show prejudice.  *Anderson*, ¶ 13.  We will reverse these discretionary rulings only when the court's "judgment may materially affect the substantial rights of the complaining party and allow the possibility of a miscarriage of justice."  *Anderson*, ¶ 13.

¶36    Medical records are private and "deserve the utmost constitutional protection." *State v. Nelson* (1997), 283 Mont. 231, 242, 941 P.2d 441, 448.  Article II, Section 10, of the Montana Constitution guarantees informational privacy in the sanctity of one's medical records.  *Nelson*, 283 Mont. at 242, 941 P.2d at 448.  However, "[w]hen a party claims damages for physical or mental injury, he or she places the extent of that physical or mental injury at issue and waives his or her statutory right to confidentiality to the extent that it is necessary for a defendant to discover whether plaintiff's current medical or physical condition is the result of some other cause." *State ex rel. Mapes v. District Court* (1991), 250 Mont. 524, 530, 822 P.2d 91, 94.  Nonetheless, the waiver is not unlimited; the defendant may only discover records related to prior physical or mental conditions if they relate to currently claimed damages.  The plaintiff's right to confidentiality is balanced against the defendant's right to defend itself in an informed manner.  *State ex rel. Mapes*, 250

11

Mont. at 530, 822 P.2d at 94. A defendant "is not entitled to unnecessarily invade plaintiff's privacy by exploring totally unrelated or irrelevant matters." *State ex rel. Mapes*, 250 Mont. at 530, 822 P.2d at 95.

¶37 The District Court denied the State's motion to compel production of all Kristin's health care records (including medical and counseling records) from before and after Hunter's fall and granted a protective order on the basis that the records were constitutionally protected, irrelevant to the issues in this case, and therefore not discoverable. The court conducted an *in camera* review of Kristin's medical records. An *in camera* review is often used at various stages throughout discovery and trial "to balance the privacy interests of the parties and the need to know. The *in camera* procedure can effectively offer protection to both parties by avoiding needless exposure of potentially harmful information." *State v. Burns* (1992), 253 Mont. 37, 39, 830 P.2d 1318, 1319-20. The court can preview potentially damaging information before it is released, *Burns*, 253 Mont. at 39, 830 P.2d at 1320, and decide what information is properly discoverable, *In re Lacy* (1989), 239 Mont. 321, 326, 780 P.2d 186, 189.

¶38 A defendant is not allowed unfettered access to all medical records he believes may help his defense. In *State v. Mix*, the trial court refused access to records because the subject matter was irrelevant and too remote to the case. *State v. Mix* (1989), 239 Mont. 351, 360, 781 P.2d 751, 756. In that case, a defendant charged with deliberate homicide sought medical records regarding the victim's asthma condition. *Mix*, 239 Mont. at 360, 781 P.2d at 756.

12

¶39 In the present case, Kristin commenced an action for damages for her personal injuries which placed in issue her mental and physical condition arising from the accident. *Jaap v. District Court* (1981), 191 Mont. 319, 322, 623 P.2d 1389, 1391; *State ex rel. Mapes*, 250 Mont. at 530, 822 P.2d at 94. In doing this, she waived any physician-patient privilege as to a mental or physical condition in controversy. *Jaap*, 191 Mont. at 322, 623 P.2d at 1391; Rule 35(b)(2), M.R.Civ.P. This includes testimony her physicians may have provided concerning her prior mental condition. Kristin did not produce records from before Hunter's accident because the records were "sensitive and personal." She did produce redacted medical records for the period after Hunter's accident which she determined were relevant. The State did view the redacted portion of Kristin's medical records. However, the State sought all Kristin's mental and medical health records from ten years before Hunter's accident (1985) through time of trial.

¶40 Kristin claims that because she provided her doctors with complete copies of the disputed medical records, and her doctors stated the records showed no causal correlation between any previous injury or condition and her current injuries, this ends the inquiry into the medical records. Kristin argues that the State should be denied access to the records because it did not present any expert medical opinion that her alleged injuries were more probably than not caused by some factor other than witnessing Hunter's fall. The fallacy in this argument is that there was no way that the State *could* have provided this opinion because it was denied access to the very records which would have enabled it to make this

determination. The court's denial of these records only allowed for one-sided review of the medical records by Kristin's physicians.

¶41 The State was prejudiced when it was denied the right to defend itself in an informed manner. It had the right to discover evidence related to prior physical or mental conditions possibly connected to Kristin's current damages. *State ex rel. Mapes*, 250 Mont. at 530, 822 P.2d at 94. The State is not entitled to unnecessarily invade Kristin's privacy by exploring totally unrelated or irrelevant matters. *State ex rel. Mapes*, 250 Mont. at 530, 822 P.2d at 95. However, because Kristin presented her entire medical records file to her treating physicians and asked for their expert medical opinions, which were at least in part based on the records which were denied to the defense, she waived her statutory right to confidentiality but *only to the extent* that it is necessary for the State to discover for itself whether Kristin's current medical or physical condition is the result of some other cause. *State ex rel. Mapes*, 250 Mont. at 530, 822 P.2d at 94. The State thus has a right to review Kristin's medical records to determine whether her present condition is attributable to some preexisting cause.

¶42 The similarity between Kristin's present claims and those for which she was previously treated shows the possible correlation between her pre-accident records and her present claims. Kristin's claims involve emotional distress, loss of consortium, and post-traumatic stress disorder (PTSD). The record indicates that prior to Hunter's accident, she was taking medications which can be used to treat depression, headaches, sleep disorders, and anxiety. The connection between Kristin's present claims and her past conditions is not

14

attenuated as it was in *Mix* where access to records was denied. *Mix,* 239 Mont. at 360, 781 P.2d at 756. Accordingly, we reverse the District Court's denial of the State's motion to compel production of the medical records.

Financial Documents, School Transcripts, and Personnel Records

¶43 The District Court granted an order protecting Kristin's financial documents, school transcript, and personnel records. The State sought to have these records produced in an effort to quantify Kristin's damages. However, the court ruled that Kristin's statement of damages was sufficient and the documents were not likely to lead to discovery of any relevant information.

¶44 Because the State is the party alleging error in the District Court's discovery rulings, the State must show how it was prejudiced by the trial court's ruling. *Anderson*, ¶ 13. Kristin does not claim lost earnings or lost earning capacity; rather her mental and emotional states are at issue. The requested documents have no bearing on these legitimate issues. The State fails to show that the denial of the requested documents substantially prejudiced it or impaired its ability to present a defense. We find no abuse of discretion. We affirm.

¶45 Issue 4: Whether the District Court erred in not allowing the State to depose Hunter or to call him as a witness?

¶46 We review a grant or denial of a motion in limine for an abuse of discretion. *Bramble v. State,* 1999 MT 132, ¶ 16, 294 Mont. 501, ¶ 16, 982 P.2d 464, ¶ 16. We will not overturn a district court's ruling on discovery unless the party alleging error proves an abuse of discretion and resulting prejudice. *Anderson*, ¶ 13. Rule 26(c), M.R.Civ.P., allows a court

15

to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden . . . including . . . that the discovery not be had[.]" There is no minimum age requirement with regard to child testimony. *State v. Eiler* (1988), 234 Mont. 38, 42, 762 P.2d 210, 213 (testimony from four-year-old and five-year-old children allowed). However, child witnesses need "protection against the potential emotional and psychological injuries" that may occur with regular litigation procedures. *State v. Sor-Lokken* (1991), 247 Mont. 343, 349, 805 P.2d 1367, 1372. Furthermore, needlessly cumulative evidence may be excluded. Rule 403, M.R.Evid.

¶47 The District Court issued a protective order precluding a deposition of Hunter and reaffirmed this decision when it granted a motion in limine to exclude Hunter as a witness. The court reasoned that because Hunter was only three years old at the time of the accident, and only nine years old at the time of the trial, little probative information could be gained by forcing him to testify regarding the stress his mother suffers because of his head injury. The court also stated that such testimony would be traumatic and unduly burdensome to Hunter. Additionally, any information Hunter could have provided was available from other witnesses, such as physicians and school teachers, and thus would be cumulative. Rule 403, M.R.Evid.

¶48 The State has failed to show prejudice resulting from the exclusion of Hunter's testimony. Due to his young age, Hunter does not remember the accident or his mother's condition before the accident. He could not testify as to how the accident changed her life.

16

The State had the opportunity to question Kristin and other adult witnesses regarding her condition before and after Hunter's accident.

¶49 Furthermore, because the State had the opportunity to use expert witness testimony regarding Hunter's condition, it did not need Hunter to testify regarding the effects the accident had on him. The State listed Dr. Bach as an expert witness for Kristin's trial to present testimony based on his examination of Hunter and also to report on Hunter's past and present condition. Since the State could have used Dr. Bach's testimony but chose not to, it was not prejudiced by the inability to call Hunter as a witness. The court did not act arbitrarily without conscientious judgment and did not abuse its discretion. We affirm the order of the court protecting Hunter from having to testify at deposition or at trial.

¶50 Issue 5: Whether the District Court erred in prohibiting the State from conducting an IME and in excluding the State's expert witness?

¶51 We review a district court's rulings on discovery motions for an abuse of discretion. *Anderson*, ¶ 13. Rule 35, M.R.Civ.P., recognizes an independent medical examination (IME) as a form of discovery. This Court has recognized an IME as a valid tool to determine if and to what extent a defendant suffers from an alleged injury. *Winslow v. Montana Rail Link*, 2001 MT 269, ¶ 16, 307 Mont. 269, ¶ 16, 38 P.3d 148, ¶ 16. "A plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Winslow*, ¶ 9 (citation and internal citation omitted). Thus if a plaintiff alleges mental or physical injury, he or she puts

17

the existence of that injury at issue and provides the defendant with good cause to request that an IME be conducted. *Winslow*, ¶ 9.

¶52   In this case, the court issued a scheduling order that required exchange of all expert witnesses (including a comprehensive statement of the proposed expert's opinions and the grounds for the opinions) by November 15, 2001. The discovery deadline was December 15, 2001. The court amended the deadline for taking depositions to January 25, 2002.

¶53   As early as September 23, 1997, and numerous times thereafter, the State had access to records that indicated Kristin suffered from emotional distress resulting from her son's injuries. However, it was not until October 22, 2001, that Kristin used, for the first time, the term "on-going post traumatic stress" in a supplemental discovery response. Kristin's November 15, 2001, expert witness disclosure stated that Dr. Erin Bigler believed Kristin suffered from PTSD. On this same day, the State disclosed Dr. Price as an expert witness, and reserved the right to conduct an IME of Kristin. The State disclosed Dr. Price's general opinion without details because he had not yet performed the IME. On November 30, 2001, the State requested Kristin submit to an IME. Kristin did not make herself available for this examination.

¶54   On December 6, 2001, the State moved the court to order Kristin to submit to an "emergency IME" because it had not been previously informed Kristin suffered from PTSD. This motion, made before the discovery deadline, was initially granted. However, the IME was later denied because, after reconsideration, the court determined that since the State

18

knew of Kristin's PTSD since September 1997, the request for the IME came too late in the proceedings. We are not so persuaded.

¶55 Kristin claims the State had four years to conduct an IME because she provided the State with her mental health records from 1997 which contained the PTSD diagnosis. Nonetheless, the mere existence of the record is insufficient notice that she was planning to use this diagnosis as a basis for damages in the present lawsuit. The State did not know that fact until the supplemental discovery response from October of 2001. Upon learning this, the State timely filed its motions to have Kristin undergo an IME so that the State could adequately prepare its defense. If Kristin had earlier revealed the fact that she was going to use the PTSD diagnosis as a basis for damages, the State would not have been forced to run so close to the ever-looming discovery deadline. As it was, the State complied with the court's discovery deadlines. We reverse the court's denial of the State's request for an IME.

¶56 Now we examine the fact that Dr. Price was precluded from testifying as a witness. The State disclosed Dr. Price as an expert witness within the time-limit imposed by the scheduling order. The State twice provided the required supplementation regarding his testimony, to the extent possible given the limited amount of information with which he had to work. The court, however, barred Dr. Price from testifying as a witness because he had not conducted an IME as a basis for his testimony. Although much of the information necessary to provide a comprehensive report was not available to him because Kristin's complete medical records and the IME were denied, Dr. Price still could have testified based on his medical knowledge and the redacted medical records available to him.

19

¶57    "The underlying policies of Rule 26, M.R.Civ.P., are to eliminate surprise and to promote effective cross-examination of expert witnesses." *Hawkins v. Harney*, 2003 MT 58, ¶ 21, 314 Mont. 384, ¶ 21, 66 P.3d 305, ¶ 21. In *Scott v. Dupont De Nemours & Co.* (1989), 240 Mont. 282, 286-87, 783 P.2d 938, 941, we stated that although discovery answers regarding an expert witness were very brief, the expert was not a surprise witness and refusing to allow him to testify because full and complete discovery answers were not provided was an extreme sanction.

¶58    In this case, the District Court sanctioned the State by preventing Dr. Price from testifying. We have identified the following criteria to determine whether a sanction is an abuse of discretion or too severe: "1) whether the consequences imposed by the sanctions relate to the extent and nature of the actual discovery abuse; 2) the extent of the prejudice to the opposing party which resulted from the discovery abuse; and 3) whether the court expressly warned the abusing party of the consequences." *Maloney v. Home & Investment Center, Inc.*, 2000 MT 34, ¶ 35, 298 Mont. 213, ¶ 35, 994 P.2d 1124, ¶ 35.

¶59    Applying the above criteria, we determine that the court sanction was too severe. The discovery abuse committed by the State, if any, was a tardy request for an IME which was, nonetheless, still within the court-mandated time. An IME need not be conducted by the date set for expert disclosures. The State provided a list of expert witnesses, including Dr. Price, by the court-imposed deadline. The information provided regarding Dr. Price's testimony was sufficient to satisfy the Rule 26 requirements. The State provided the subject matter, the factual substance, and a summary of the grounds for Dr. Price's opinion. The

20

State also supplemented Dr. Price's testimony by the deadline for all discovery to be completed. The State supplemented Dr. Price's testimony a second time, after the deadline for discovery passed but before the extended January 25, 2002, deadline for the taking of depositions. Ideally, the State would have provided all supplementation by the discovery deadline. However, the State was attempting to provide as complete a picture as possible regarding Dr. Price's testimony. If his testimony was not comprehensively described in answers to interrogatories, that was in large part due to the District Court's rulings precluding an IME and excluding full access to Kristin's medical records.

¶60     In addition, Dr. Price's disclosures were provided before the deadline for all depositions had passed. Any prejudice suffered by Kristin was minimal because she was well-aware Dr. Price was listed as an expert witness and she had ample time to depose him. No surprise is alleged and none occurred. In its scheduling order, the court generally warned that noncompliance with the order's provisions could result in the imposition of sanctions. However, no more specific warning was ever given.

¶61     Having reviewed the court's ruling in the context of the three *Maloney* criteria, we conclude that the court abused its discretion in not allowing Dr. Price to testify. The facts here are distinguishable from *Seal v. Woodrows Pharmacy,* 1999 MT 247, 296 Mont. 197, 988 P.2d 1230. In that case, we upheld a trial court's prohibition of a doctor's testimony because of continual and blatant discovery abuses when Seal refused to provide the required Rule 26 information even after being afforded numerous opportunities to do so. *Seal*, ¶ 25. In this case, the State did not engage in continual and blatant discovery abuses. The court

21

should have, at a minimum, allowed Dr. Price to testify based on his review of Kristin's redacted medical records. We reverse the District Court's decision not to allow Dr. Price to testify as an expert witness.

¶62    Issue 6: Whether the District Court erred in excluding evidence of (1) stressors in Kristin's life unrelated to the accident and counseling services Kristin received prior to Hunter's accident; and (2) a prior fall at the MSU library?

¶63    We review a grant or denial of a motion in limine for an abuse of discretion. *Bramble*, ¶ 16. The trial court has the inherent power to deny or grant a motion in limine to ensure that a fair trial is afforded to all parties. *Bramble*, ¶ 16. Litigants must establish a causal connection more probable than not connecting any possible cause of a plaintiff's injuries before alternate causation testimony is allowed at trial; mere speculation is not sufficient and not admissible. *Newville v. State, Dept. of Family Svcs.* (1994), 267 Mont. 237, 260, 883 P.2d 793, 807.

¶64    A district court has broad discretion to determine whether evidence is relevant and admissible, and we will not overturn the district court's decision absent an abuse of discretion. *Kissock v. Butte Convalescent Center*, 1999 MT 322, ¶ 10, 297 Mont. 307, ¶ 10, 992 P.2d 1271, ¶ 10. A court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, needless presentation of cumulative evidence, waste of time, undue delay, or misleading the jury. Rule 403, M.R.Evid.

¶65    In *Kimes v. Herrin* (1985), 217 Mont. 330, 333, 705 P.2d 108, 110, we stated that it was an abuse of discretion for a trial court to allow testimony suggesting that a plaintiff's home environment *may* have caused the plaintiff's symptoms because no medical connection was established between the home environment and the appellant's symptoms.

¶66    The question of what caused Kristin's symptoms is critical to the issue of her damages. If any information has a tendency to make the alleged cause of the symptoms more or less probable, it would be relevant and admissible, unless otherwise provided by law. Rules 401 and 402, M.R.Evid.

Unrelated Stressors and Prior Counseling

¶67    The District Court, pursuant to Rule 403, M.R.Evid., granted Kristin's motion in limine excluding evidence regarding other life stressors because it would be more prejudicial than probative. The life stressors included Kristin's divorce in 1994, her parents' divorce in 1974, work issues, and child custody issues. The State did not offer an expert opinion that it was more probable than not that prior stressors may have contributed to or were relevant to Kristin's present claims.

¶68    Before Hunter's accident, Kristin received brief counseling in 1983 or 1984 and also in 1992. Kristin was able to produce a portion of these counseling records but claims others were unavailable because the counseling occurred so long ago. The State has offered no evidence to dispute this. Kristin also produced some more recent redacted counseling records. The District Court granted Kristin's motion in limine excluding evidence of this

23

prior unrelated counseling because it was information unrelated to Kristin's case, too remote, irrelevant, and more prejudicial than probative.

¶69 On appeal, the State presents a cursory two paragraph argument that it is entitled to discover evidence of any alternative causation for Kristin's claims and that she waived her right to privacy by putting her emotional state at issue in this suit. Kristin placed her mental and physical condition at issue by claiming damages for this type of injury. *Jaap*, 191 Mont. at 322, 623 P.2d at 1391. However, by doing so she has only waived the physician-patient privilege that applies to her mental or physical condition in controversy. *Jaap*, 191 Mont. at 322, 623 P.2d at 1391.

¶70 The State did not present expert testimony that established a causal connection between Kristin's present symptoms and the other stressors or the prior counseling records. Absent this more probable than not causal link, the State is not entitled to present alternate causation evidence regarding the other stressors and is also not entitled to any more records than it already has access to. *Kimes*, 217 Mont. at 333, 705 P.2d at 110; *Newville*, 267 Mont. at 260, 883 P.2d at 807. The State is not entitled to embark upon an unbridled fishing expedition into Kristin's life, spanning years far-removed from the present case, in an attempt to fashion some alternate cause for her current claims. Moreover, the State has not disputed Kristin's assertion that she was unable to access the other counseling records. We affirm the trial court's order precluding the prior counseling records and evidence of other stressors.

Prior Fall

24

¶71 In the event we remand for a new trial, Kristin cross-appeals the motion in limine denying evidence of a prior fall at the same location as Hunter's fall. Because we remand for a new trial on damages, we examine her cross-appeal.

¶72 The District Court granted the State's motion in limine excluding evidence of the prior fall. The court concluded the prior fall related only to the duty and breach elements of negligence. It specifically noted that evidence of the prior fall was excluded because the issue of liability had already been fixed and the fall did not relate to Kristin's direct emotional impact. The court stated that the prior fall did not directly contribute to Kristin's emotional distress because shock suffered in a negligent infliction of emotional distress claim must result from a direct emotional impact upon the plaintiff from the sensory and contemporaneous perception of the accident, as compared to learning of the accident from others after its occurrence. However, this reasoning is inconsistent with *Sacco v. High Country Independent Press* (1995), 271 Mont. 209, 232, 896 P.2d 411, 425, in which we stated that "[a] cause of action for negligent infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent act or omission." One is not required to be a bystander at an accident to have a valid claim for emotional distress damages. It is one factor a court can consider but it is not determinative. *Wages v. First Nat'l Ins. Co. of Am.*, 2003 MT 309, ¶ 25, 318 Mont. 232, ¶ 25, 79 P.3d 1095, ¶ 25.

¶73 We have recognized that evidence of prior accidents may be offered for various reasons besides proving negligence. *Kissock*, ¶ 15 (evidence of prior accidents may be

25

admitted to show cause in fact, notice of a condition or defect, the existence or dangerousness of a particular physical condition, and the possibility that a condition might cause an accident similar to the type alleged). Kristin claims that learning of the prior fall soon after witnessing Hunter's fall contributed to her psychological injuries. Accordingly, she contends, the prior fall relates to damages as well as duty and breach. Kristin's learning of the prior fall made her claim of psychological/emotional distress more or less probable. Rule 401, M.R.Evid. As such, it was relevant to the issue of damages. To the extent the District Court excluded evidence of the prior fall for the reason that there was no contemporaneous perception, we reverse. We note, however, that the State also objected to evidence of the other fall as being more prejudicial than probative under Rule 403, M.R.Evid. That question was not addressed in the proceedings below and is more appropriately left to the discretion of the District Court on remand.

¶74     Issue 7: Whether the District Court erred in its jury instructions concerning the claims of emotional distress and loss of established course of life?

¶75     A trial court has broad discretion in determining whether to give a proposed jury instruction. *Christofferson v. City of Great Falls*, 2003 MT 189, ¶ 9, 316 Mont. 469, ¶ 9, 74 P.3d 1021, ¶ 9. We will not reverse a district court on the basis of its jury instructions absent an abuse of discretion. *Christofferson*, ¶ 9. "In reviewing whether a particular jury instruction was properly given or refused, we consider the instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial." *Christofferson*, ¶ 9 (citation omitted). The party alleging error in a jury instruction must

26

demonstrate prejudice. *Christofferson*, ¶ 9. Prejudice will not be found if the jury instructions in their entirety state the applicable case law. *Christofferson*, ¶ 9.

¶76 Montana law provides for monetary compensation to every person who suffers detriment from the unlawful act or omission of another. Section 27-1-202, MCA. Emotional distress produces its own unique damages. Damages can be compensatory (permitted for both intentional and negligent infliction of emotional distress) or punitive (permitted for intentional infliction of emotional distress to address the culpability of a defendant's conduct). *Sacco*, 271 Mont. at 238, 896 P.2d at 429. Damages for loss of ability to pursue an established course of life compensate for impairment of the ability to pursue one's chosen pursuits in life, calculated separately from the loss of one's earning capacity. *Mullery v. Great Northern Ry. Co.* (1915), 50 Mont. 408, 426, 148 P. 323, 328. Contrary to the State's contention, a claim for the loss of ability to pursue an established course of life need not be premised on a physical limitation. A plaintiff is "entitled to recover, in the case of permanent injuries, a reasonable compensation for the destruction of his capacity to pursue an established course of life." *Rasmussen v. Sibert* (1969), 153 Mont. 286, 297, 456 P.2d 835, 841.

¶77 In this case, expert medical testimony was introduced at trial which described Kristin's PTSD symptoms. The expert stated this well-recognized mental injury has physical components, including brain chemistry and hormone level alterations. PTSD symptoms are a response to an emotional trauma that leads to a physical impact upon the brain.

27

¶78    In settling jury instructions on Kristin's claim for negligent infliction of emotional distress, the court reasoned that the heightened standard of severe or serious distress from *Sacco* only applies in cases where there is no physical or mental injury.  Since Kristin suffered PTSD with resulting physical impact, the court concluded the *Sacco* severe or serious standard did not apply.  Accordingly, the court instructed that Kristin only had to prove that she suffered emotional distress or psychological injury as a result of Hunter's fall.  The State contends that the instructions were incorrect because they did not require that the emotional distress meet the severe or serious standard required by *Sacco*, which cited Restatement 2nd of Torts, § 46, comment j.  *Sacco*, 271 Mont. at 233, 896 P.2d at 425.

¶79    Since we are remanding for a new trial on damages, we take this opportunity to clarify the rule from *Sacco* that emotional distress must be severe or serious.  In cases where there is a physical manifestation of bodily harm resulting from emotional distress, such as PTSD, this bodily harm is sufficient evidence that the emotional distress suffered by the plaintiff is genuine and severe.  As explained in the Restatement 2nd of Torts, § 46, comment k, "[n]ormally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which *in itself* affords evidence that the distress is genuine and severe." (Emphasis added.)  This manifestation assures that only genuine harm, not fraudulent claims, will be compensated.

¶80    The State also claims that Kristin is not permitted to recover damages for both loss of ability to pursue an established course of life and damages for emotional distress.  However, the State has failed to provide any law supporting this contention.  Contrary to the

28

State's claims, no dual recovery has occurred. We have previously recognized claims for emotional distress as separate, independent claims and we continue this rule. *Sacco*, 271 Mont. at 238, 896 P.2d at 429. Loss of established course of life and emotional distress are two separate and distinct claims with differing elements and different compensable damages. Hence, if supported by the evidence, a separate recovery is allowed for each. Whether the damages overlap is a question of proof. For example, PTSD may or may not impact upon one's ability to pursue an established course of life.

¶81    The court incorrectly instructed the jury regarding emotional distress but correctly instructed regarding loss of established course of life. A jury instruction on emotional distress should state that the severe and serious standard applies and that this standard can be met by proof that emotional distress resulted in shock, illness, or other bodily harm.

¶82    Issue 8: Whether the District Court erred in excluding the videotapes of Hunter?

¶83    A district court has broad discretion in admitting or excluding evidence. *Rocky Mountain Ent. v. Pierce Flooring* (1997), 286 Mont. 282, 290, 951 P.2d 1326, 1331. The decision whether to admit videotape evidence lies in the discretion of the trial court and will not be reversed absent a manifest abuse of discretion. *Palmer by Diacon v. Farmers Ins. Exch.* (1988), 233 Mont. 515, 523, 761 P.2d 401, 406. For an exhibit to be admissible for demonstrative purposes it must supplement a witness's spoken description of the transpired event, clarify some case issue, and be more probative than prejudicial. *State v. Ingraham*, 1998 MT 156, ¶ 94, 290 Mont. 18, ¶ 94, 966 P.2d 103, ¶ 94.

¶84    In this case, the State sought to introduce video footage, as demonstrative evidence, showing Hunter as a well-adjusted child, not suffering from any deficits. The State attempted to introduce this evidence through the testimony of Hunter's grandmother. The District Court refused to allow the evidence because it did not supplement testimony or clarify issues and, as the court noted, the tape did not accurately depict Hunter's life. The tape was edited from hours of home videos showing the best of the best–happy occasions such as birthdays and holidays and fun outdoor activities like swimming.

¶85    On appeal, the State argues that because it attempted to introduce the videotape with Hunter's grandmother's testimony that the tape depicted happier moments of Hunter's life, it provided adequate foundation for the tape to be admitted. The State claimed that the tape accurately portrays Hunter as a happy, well-adjusted child. The State sought to introduce the tape to counter Kristin's assertions that, due to Hunter's condition, she suffered emotional distress. The State, however, has failed to establish that the exclusion of the videotape was a manifest abuse of discretion. The videotape fails to satisfy the requirements set out in *Ingraham*. *Ingraham*, ¶ 94. Therefore, we affirm the exclusion of the videotape.

¶86    Issue 9: Whether the District Court erred in not dismissing jurors for cause?

¶87    We review a trial "court's refusal to grant a challenge for cause for an abuse of discretion." *Reff-Conlin's, Inc. v. Fireman's Fund Ins. Co.*, 2002 MT 60, ¶ 16, 309 Mont. 142, ¶ 16, 45 P.3d 863, ¶ 16. Section 25-7-223, MCA, provides specific grounds for posing challenges for cause. The State contends that § 25-7-223(7), MCA, "the existence of a state of mind in the juror evincing enmity against or bias in favor of either party[,]" was satisfied

30

because several jurors, days before the trial, saw a local newspaper article that mentioned the prior fall.

¶88    In order to ensure against bias, the District Court interviewed the eight jurors who had read the article. One juror who stated that he was not sure if he could keep the prior fall out of his mind was excused for cause. The other seven jurors stated they would be able to keep an open mind and fairly decide the case. The State has not demonstrated that any of these remaining jurors had a state of mind "evincing enmity against or bias in favor of either party" as a result of reading the article. Section 25-7-223(7), MCA.

¶89    The only case the State relies on in support of its argument is *Reff-Conlin's, Inc.* In that case, we determined that a juror should have been excluded because of the existence of a debtor-creditor relationship, satisfying another, more specific, statutory grounds for challenge. *Reff-Conlin's*, *Inc.,* ¶ 21. That case is factually dissimilar to the case at bar because no specific grounds for challenge for cause have been established. The State has not shown that the District Court abused its discretion in denying the challenges for cause. We affirm.

¶90    In conclusion, we reverse and remand for a new trial on damages in light of our rulings on issues three, five, and six.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JIM RICE

31

Justice John Warner Concurring and Dissenting.

¶91    I concur in Issues 1-5 and 7-9.  Relating to Issue 6, I also agree that evidence of the prior fall of another child at the MSU Library, if such were admissible, would be subject to a discretionary Rule 403, M.R.Evid., analysis.

¶92    However, ordering that the evidence of the prior fall may be admitted, not to prove fault or causation, but damages, is a serious mistake.  As noted in the Court's opinion,  it is true that *Sacco* and *Wages* stand for the propositions that a claim for negligent infliction of emotional distress will arise where serious or severe emotional distress was a reasonably foreseeable consequence of a defendant's negligence, and that the plaintiff does not have to be a bystander to have a valid claim.  However, these are not the issues presented by the facts here.  Here, the majority of this Court takes a giant leap forward in the law and determines that when a person is negligent, as the State apparently was in the instance of the prior fall, it is foreseeable that other persons who observe the results of a subsequent, separate negligent act or omission may suffer increased damages, actually caused by the first incident, because their already severe emotional damages are increased when they hear of such prior negligence.  Thus, we may now have changed the law in Montana and held that it is foreseeable that an act or omission constituting negligence may result in damages owed to other, as yet uninjured persons, for an indefinite time in the future.  We have held that such initial negligence may be admissible, along with other subsequent negligent acts or omissions, as evidence of emotional damages, even though such do not arise from the same accident or even concern the same injured person.  And, the person claiming such damages need not have any relationship with or connection to the person actually injured in the first

32

incident. A subsequent negligent act or omission which causes emotional damage could somehow be deemed to be the cause of the damage really suffered as a result of the first negligent act or omission.

¶93 To summarize what is apparently the new rule, with which I emphatically disagree, in Montana, a person who is negligent has a duty, and by his negligence has already breached that duty, to all other persons who in the future may suffer an increase in their emotional distress because of such negligent act or omission. Cause is established when the subsequently severely emotionally damaged person learns of the prior negligence, and all that has to be proven is damages. Further, the prior act apparently need not be included in the pleadings even though it is the cause of damages.

¶94 Where will it end? As Schultz's Charlie Brown is wont to say; Good Grief! Kristin deserves the damages she suffered as a result of Hunter's accident, not every other stairway accident on campus. I dissent from this Court's Opinion that evidence of the prior fall may be admitted if the District Court finds that its evidentiary value is not outweighed by its prejudice to the State.

/S/ JOHN WARNER

Chief Justice Karla M. Gray joins in the foregoing concurrence and dissent.

/S/ KARLA M. GRAY

Justice Patricia O. Cotter concurring in part and dissenting in part.

¶95 I concur in the Court's disposition of Issues 1, 2, 3(2), 4, 6, and 7 through 10. I dissent from the Court's disposition of Issues 3(1) and 5. I would affirm the verdict and judgment of the District Court.

¶96 Issue 3(1) presents the question of whether the District Court abused its discretion when it denied the defendants' request for the production of all of Kristin's medical and mental health records. As the Court points out, the District Court entered its Order following an *in camera* inspection of the medical and mental health care records in question. ¶ 37. We have consistently upheld the use of the *in camera* review as a tool that effectively protects both parties. See *Burns*, 253 Mont. at 39, 830 P.2d at 1319-20; *State v. Thiel* (1989), 236 Mont. 63, 768 P.2d 343; *State v. Mix* (1989), 239 Mont. 351, 781 P.2d 751; and *In re Lacy* (1989), 239 Mont. 321, 780 P.2d 186. As we stated in *Burns*, "[p]rohibiting discovery of materials that are not probative is one of the functions of trial judges which is within their discretionary powers." *Burns*, 253 Mont. at 43, 830 P.2d at 1322. I would conclude that the District Court judge properly conducted an *in camera* review under the circumstances presented in this case, and that, in concluding from his review that the subject records were ". . . subject to strong constitutional protections, are irrelevant to the issues in this case, and are not discoverable," he performed precisely the function we have historically endorsed. We do not disturb the rulings of the district court absent an abuse of discretion. *Burns*, 253 Mont. at 42, 830 P.2d at 1322. I see nothing in the record before us that establishes an abuse of discretion in the District Court's handling of the disputed medical records. I would therefore affirm on this issue.

¶97 I would also affirm the District Court's decision prohibiting the State from conducting an IME and excluding the testimony of the State's expert witness. (Issue 5). We review such a ruling to determine whether the district court abused its discretion. ¶ 51. I would conclude that no abuse of discretion was shown.

¶98 In denying the State's request for an IME, the District Court found, based upon the medical records, that the State had known of Kristin's PTSD since September, 1997. It therefore rejected the State's contention that her disclosure of the condition in late 2001 was a surprise. This Court concludes at ¶ 55 that the early disclosure of the records containing the PTSD diagnosis was insufficient notice that Kristin intended to use the diagnosis as a basis for her damages claim. This is entirely too fine a distinction for us to draw, especially when applying an abuse of discretion standard of review. The fact is, as the State conceded in its brief opposing reconsideration of the IME issue, the State was aware early in the proceedings that Kristin was claiming she suffered from emotional distress, depression and anxiety, and emotional disturbance, as a result of her son's fall and injuries. The medical records contained the technical diagnosis. It seems to me, and it apparently seemed to the District Court as well, that this combination of disclosures, given well in advance of the discovery deadlines, provided the State with ample time and notice to arrange for an IME prior to the deadline for disclosure of expert witnesses.

¶99 While the Court may feel that greater latitude should have been shown by the District Court, it is not our function to overturn a discretionary ruling that is supported by the facts in the record. I would uphold the District Court's exercise of discretion on this issue.

35

¶100 Finally, I would affirm the District Court's refusal to allow Dr. Price to testify. The District Court's scheduling order required the filing of a "comprehensive statement of the proposed expert's testimony" and "a comprehensive statement" of the grounds for the expert's opinion, on or before November 15, 2001. Dr. Price's disclosure of November 15, 2001, did not list any opinion, much less any grounds for an opinion. The supplementary response was not filed until a month later. Given these circumstances, the District Court was well within its discretion to strike Dr. Price's testimony. We have consistently held that it is within the district court's discretion to impose sanctions for the failure to comply with a court's scheduling orders. *McKenzie v. Scheeler* (1997), 285 Mont. 500, 506, 512, 949 P.2d 1168, 1172, 1175. This is what the District Court did. There was no abuse of discretion.

¶101 For the foregoing reasons, I would affirm the District Court's disposition of the matters raised in Issues 3(1) and 5, and would affirm the judgment of the District Court. I dissent from our refusal to do so.

/S/ PATRICIA O. COTTER

Justice James C. Nelson and Justice Jim Regnier join in the concurrence and dissent of Justice Patricia O. Cotter.

/S/ JIM REGNIER
/S/ JAMES C. NELSON