No. 02-604

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 309

─────────────────────────────────────

GERALD WAGES,

      Plaintiff and Appellant,

  v.

FIRST NATIONAL INSURANCE COMPANY
OF AMERICA AND PHILLIP PEGAR,

      Defendants and Respondents.

─────────────────────────────────────

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DV 01-0537
The Honorable Gregory R. Todd, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Scot Schermerhorn, Edmiston, Schermerhorn & Colton, Billings, Montana

      For Respondents:

          John E. Bohyer, Tammy Wyatt-Shaw, Fred Simpson, Phillips & Bohyer,
P.C., Missoula, Montana (for First National Insurance Company); Geoffrey
R. Keller, Matovich & Keller, P.C., Billings, Montana (for Phillip Pegar)

─────────────────────────────────────

Submitted on Briefs: January 9, 2003

Decided: November 13, 2003

Filed:

          _____
                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Skylar Wages was seven years old when he was struck by a vehicle driven by Phillip Pegar and was seriously injured. Skylar's resulting major medical problems and treatments have been complicated and painful. While his father, Gerald Wages (Wages), did not witness the accident, he has taken an extremely active role in Skylar's medical treatment. Wages sued Pegar and Pegar's automobile liability insurer, First National Insurance Company of America (FNIC), claiming that he has sustained severe emotional distress as a result of Pegar's negligent operation of his vehicle. Both Wages and FNIC filed motions for summary judgment. The District Court denied Wages' motion and granted FNIC's motion. Wages appeals. We reverse and remand.

## ISSUE

¶2 The only issue before this Court is whether the parent of a minor child who does not witness an accident, wherein the child is seriously injured, is entitled to maintain an independent, non-derivative claim for negligent infliction of emotional distress.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On January 5, 2000, while seven-year old Skylar was roller-blading in front of his parents' mobile home, Phillip Pegar drove through the mobile home park and struck Skylar, causing serious injury. Skylar's mother, who was home at the time, ran to the scene and removed Skylar from under Pegar's truck. An ambulance arrived and took Skylar and his mother to the hospital. Wages was notified of the accident by telephone and left work, rushing to the hospital.

2

¶4    Skylar experienced bilateral pelvic fractures and complete urethral disruption. He has undergone at least four major, invasive and expensive surgical procedures since January 5, 2000, as well as considerable physical therapy. Due to the extensive nature of Skylar's urethra injury and the failure of surgery to correct the problem, Wages has had to catherize his son between three and four times per day with a large catheter tube. To adequately provide care for his son, including taking him to the children's hospital in Salt Lake City on several occasions for surgery and treatment, Wages has missed substantial time at work. As a result, he has lost income while at the same time his financial obligations for medical expenses have risen dramatically.

¶5    Skylar's prognosis remains unclear. He is behind in his education due to the accident and his ongoing medical treatment. His parents have noticed a distinct change in his personality. Moreover, the prospect of his future ability to participate in physical activities is questionable as is his ability to have children.

¶6    On the date of Skylar's accident, Pegar was insured by FNIC. Pegar had $25,000/$50,000 liability coverage. Skylar, through a court-appointed guardian and conservator, settled his claim for the policy limits of $25,000. Wages subsequently submitted a claim to FNIC for $25,000 to settle his independent claim of negligent infliction of emotional distress (NIED). FNIC denied the claim, maintaining that under state law Wages could not sustain an independent, non-derivative claim for NIED without having witnessed the accident.

¶7 On June 29, 2001, Wages filed suit for declaratory relief against FNIC, seeking a determination that FNIC must indemnify Pegar pursuant to Pegar's liability policy with FNIC. Wages claimed that a parent of a minor child need not witness an accident in order to maintain an independent claim for NIED. While the declaratory proceeding was pending, Pegar stipulated to a consent judgment in favor of Wages in the sum of $150,000. In return, Wages agreed not to execute against Pegar's assets. Pegar also assigned any of his rights as against FNIC to Wages. The District Court entered this consent judgment in favor of Wages and against Pegar in the sum of $150,000 on November 20, 2001.

¶8 Both Wages and FNIC subsequently filed motions for summary judgment. A hearing was held on June 28, 2002. On July 23, 2002, the District Court denied Wages' motion for summary judgment and granted FNIC's motion. The court subsequently entered Judgment dismissing Wages' complaint and ordered Wages to pay FNIC's costs of defense with ten-percent interest.

## STANDARD OF REVIEW

¶9 Our review of a summary judgment order is *de novo*. Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c), M.R.Civ.P. The initial burden is on the moving party to establish that there is no genuine issue of material fact; and once met, the burden shifts to the party opposing the motion to establish otherwise. *Sacco v. High Country Independent Press* (1995), 271 Mont. 209, 215, 896 P.2d 411, 415. Once the court determines that genuine issues of fact do not exist, "the court must then determine whether

4

the moving party is entitled to judgment as a matter of law." We review this legal conclusion to determine whether the court erred. *Treichel v. State Farm Mut. Auto. Ins.* (1997), 280 Mont. 443, 446, 930 P.2d 661, 663.

## DISCUSSION

¶10 The issue before this Court is whether Wages, as the father of a minor child who did not witness the accident that resulted in his child being seriously injured, is entitled to maintain an independent, non-derivative claim for negligent infliction of emotional distress. While the parties still dispute whether Pegar was negligent in causing Skylar's injuries despite Pegar's stipulated consent judgment, they nonetheless agree that no genuine issues of material fact exist relative to their summary judgment motions.

¶11 "The decision to recognize emotional distress as an independent tort has been in gradual evolution for courts nationwide, and Montana is no exception." So began this Court's analysis in *Sacco*, 271 Mont. at 220, 896 P.2d at 417. We then engaged in a comprehensive summary of our case law and relevant case law from other jurisdictions, and analyzed the various elements of a NIED claim as applied by these jurisdictions. Ultimately, we developed the following rule: An independent cause of action for negligent or intentional infliction of emotional distress arises under circumstances where 1) serious or severe emotional distress to the plaintiff was 2) the reasonably foreseeable consequence of 3) the defendant's negligent or intentional act or omission. *See Sacco*, 271 Mont. at 234 and 237, 896 P.2d at 426 and 428.

5

¶12 Wages argues that he has met each element of the *Sacco* NIED rule. FNIC does not dispute Wages' claim that his emotional distress is "serious" as defined by the Restatement (Second) of Torts, § 46, comment j at 78; it argues, however, that because Wages did not witness Skylar's accident, his emotional distress was not reasonably foreseeable.

¶13 In response to FNIC's argument, Wages maintains that he need not have witnessed Skylar's accident for it to be foreseeable that he could suffer severe emotional distress as a result of Pegar's negligent driving and Skylar's injuries. He asserts that this Court in *Sacco* expressly rejected the "bystander rule" previously set forth in *Versland v. Caron Transport* (1983), 206 Mont. 313, 671 P.2d 583.

¶14 In *Versland*, we set forth the following test for establishing a claim for damages for NIED:

> 1. The shock must result from a direct emotional impact upon the plaintiff from the sensory and contemporaneous perception of the accident, as contrasted with learning of the accident from others after its occurrence.
>
> 2. The plaintiff and victim must be closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.
>
> 3. Either death or serious physical injury of the victim must have occurred as a result of the defendant's negligence.

*Versland*, 206 Mont. at 322-23, 671 P.2d at 588. Later, in *Sacco*, we said: "[w]e recognize that negligent infliction of emotional distress as an independent tort action under the narrow *Versland* analysis is archaic and does not fully address all plaintiffs who are deserving of relief." *Sacco*, 271 Mont. at 232, 896 P.2d at 425. We then proceeded to establish the rule stated in ¶ 11 above, and we expressly overruled *Versland* and other "prior cases dealing

6

with independent causes of action involving negligent or intentional infliction of emotional distress, to the extent [such cases are] inconsistent with this opinion." *Sacco*, 271 Mont. at 239, 896 P.2d at 429. Thus, Wages argues, "sensory and contemporaneous perception of the accident" is no longer a required element of a NIED claim.

¶15 Wages maintains that Pegar had a duty to him and to Skylar under § 28-1-201, MCA, "to abstain from injuring the person . . . of another . . . ." Moreover, Wages claims that Pegar negligently breached that duty by injuring Skylar and inflicting emotional distress on Wages. He strongly asserts that it is "indisputably foreseeable" that a parent could suffer serious emotional distress as a result of the type of accident in which Skylar was involved and the ongoing injuries with which he continues to suffer.

¶16 FNIC, in turn, argues that Wages' emotional distress was not foreseeable. It relies for its position on *Treichel*, which was decided after *Sacco.* In *Treichel,* we were asked to determine whether the "Each Person" or "Each Accident" limits of liability set forth in the State Farm policy held by plaintiff and her deceased husband applied to plaintiff's claim for NIED. In reaching our conclusion, we stated:

> Unlike Carolyn [the plaintiff in the *Treichel* case], the plaintiff in *Bain* [a loss of consortium case] was not at the scene of the accident and did not witness the injuries to his spouse. As the District Court pointed out in the case before us "[i]t is this personal, on the scene, direct physical and emotional impact which distinguishes emotional distress claims under *Sacco* from loss of consortium claims. . . ." Carolyn was a separate person who received an independent and direct injury at the accident scene. Her serious and severe emotional distress was the reasonably foreseeable consequence of Hintz's negligence.

*Treichel*, 280 Mont. at 449, 930 P.2d at 665.

¶17 FNIC, interpreting this language, urges us to craft the following *Treichel* "rule"--"the individual who witnesses a family member sustain injury or death in an accident states a claim for negligent infliction of emotional distress whereas those not present at the scene who do not witness the injury causing event or its immediate aftermath may state a claim for loss of consortium." Thus, FNIC implies that in *Treichel*, we reintroduced the contemporaneous impact requirement into the NIED test. FNIC concludes its analysis by arguing that because the existence of a duty depends on the foreseeability of harm, and foreseeability requires the on-the-scene witnessing of the accident, Pegar had no established legal duty to Wages, and therefore breached no legal duty to him.

¶18 The District Court agreed with FNIC, stating:

> In this case [Wages] was not the physical victim of [Pegar] nor was he a witness to his child's accident. Therefore [Pegar] breached no established legal duty running directly to Gerald Wages. [Wages] must show the breach of an independent duty by [Pegar] that ran to [Wages] to prevail on his independent tort claim.

¶19 The District Court continued, quoting *Sacco*:

> The existence of a duty depends on the foreseeability of harm to the plaintiff:

> Thus a further limitation on the right of recovery, as in all negligence cases, is that the defendant's obligation to refrain from particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous.

*Sacco*, 271 Mont. at 232, 896 P.2d at 425.

¶20 The District Court then concluded, quoting *Treichel,* that "'personal on the scene, direct physical and emotional impact' was still vital. Duty in a NIED case, therefore, exists

8

only to those who actually witness the accident. Foreseeability is lacking to those who are not actually at the accident scene."

¶21    We disagree with the District Court's conclusion. First, we note that FNIC's and the District Court's interpretation of *Treichel* is incorrect. In *Treichel*, as we noted above, the question before the Court was the recoverability of the spouse's claim for NIED under the "Each Person" limit of liability offered under their State Farm policy. While the Court in *Treichel* did refer to the fact that Carolyn, the spouse, experienced direct on-the-scene injury, this was offered only to buttress the District Court's distinction between NIED and loss of consortium claims, and the court's conclusion that recovery should be had under the policy. It is clear from the remaining language of the Court's opinion that our fundamental ruling in *Sacco* was undisturbed. In fact, we specifically noted in *Treichel* that "[I]n clarifying the elements of a claim for negligent infliction of emotional distress in *Sacco*, we eliminated the other various sorts of theories by which independent torts of negligent infliction of emotional distress came into Montana law such as the *Versland* bystander analysis." *Treichel*, 280 Mont. at 448, 930 P.2d at 664. Thus, it is clear that we have not reintroduced the bystander component into the NIED analysis by virtue of our *Treichel* opinion.

¶22    The law as announced in *Sacco* remains applicable to the case before us. Therefore, we must determine whether Wages is entitled to maintain a NIED claim under *Sacco*.

¶23    As we noted above, duty and foreseeability are inextricably linked. *Sacco*, 271 Mont. at 232, 896 P.2d at 422-23; *LaTray v. City of Havre*, 2000 MT 119, ¶ 16, 299 Mont. 449, ¶ 16, 999 P.2d 1010, ¶ 16, ("in the absence of foreseeability, there is no duty; in the absence

9

of duty, there is no negligence"). As we recognized in *Samson v. State*, 2003 MT 133, ¶ 22, 316 Mont. 90, ¶ 22, 69 P.3d 1154, ¶ 22, "[a]nalyzing foreseeability in the duty context, we look to whether or not the injured party was within the scope of risk created by the alleged negligence of the tortfeasor--that is, was the injured party a foreseeable plaintiff?"

¶24 This Court has long held that the existence of a legal duty is a matter of law to be determined by the court. *Roy v. Neibauer* (1981), 191 Mont. 224, 226, 623 P.2d 555, 556. *See also, Lopez v. Great Falls Pre-Release Services,* 1999 MT 199, 295 Mont. 416, 986 P.2d 1081; *LaTray*, ¶¶ 18 and 26. As an element of duty, foreseeability must be determined by the court as well. In the case before us the District Court concluded that Wages was not a foreseeable plaintiff because he had not witnessed the accident and, therefore, as a matter of law, Pegar owed no duty to him.

¶25 The District Court reached this conclusion by erroneously interpreting and applying *Treichel*. As we explained above, it should have applied *Sacco*. In *Sacco*, we severed the previously mandatory nexus between witnessing the accident and foreseeability, and established that a defendant can owe a duty to a NIED claimant even in circumstances where the claimant was not at the scene of the accident. Therefore, the District Court erred in premising its conclusions solely on the fact that Wages did not witness the accident. For this reason, we reverse and remand this matter to the District Court to determine once again, under *Sacco* and not *Treichel*, whether Wages was a foreseeable plaintiff. For such a determination, the court may consider such factors as the closeness of the relationship between the plaintiff and victim, the age of the victim, and the severity of the injury of the

victim, and any other factors bearing on the question. Moreover, the court <u>may</u> consider whether the plaintiff was a bystander to the accident. It may not, however, rely exclusively on the fact that a plaintiff was *not* a bystander to conclude that such a plaintiff is an unforeseeable plaintiff.

¶26 Should the court determine that foreseeability and duty exist and that upon the evidence, "severe" or "serious" emotional distress could be found, it is then the jury's responsibility to determine whether that duty was breached, whether that breach caused Wages' to suffer "severe" or "serious" distress, and, if so, what damages Wages has suffered.

## CONCLUSION

¶27     For the foregoing reasons, we reverse and remand this matter for further proceedings consistent with this Opinion.

/S/ PATRICIA COTTER

We Concur:

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ JIM RICE