No. 03-531

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 141

LORI BLAIN, Personal Representative of the
Estate of Gary L. Everhard,

   Plaintiff and Appellant,

  v.

STILLWATER MINING COMPANY, a Delaware
Corporation, and ROBERT J. AAFEDT,

   Defendants and Respondents.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
       In and for the County of Yellowstone, Cause No. DV 01-855,
       The Honorable Gregory R. Todd, Judge presiding.

COUNSEL OF RECORD:

   For Appellant:

     Stephen C. Mackey, Towe, Ball, Enright, Mackey & Sommerfeld, P.L.L.P.,
     Billings, Montana

   For Respondents:

     Paul C. Collins, Ian McIntosh, Crowley, Haughey, Hanson, Toole &
     Dietrich, P.L.L.P., Billings, Montana

          Submitted on Briefs: December 4, 2003

              Decided:  June 7, 2004

Filed:

            Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Plaintiff, Lori Blain, as personal representative of the estate of Gary Everhard, filed a Complaint and Jury Demand asserting wrongful death, personal injury and survival action in the Thirteenth Judicial District Court, Yellowstone County. Defendants, Stillwater Mining Company and Robert Aafedt, answered the complaint and subsequently filed Motions for Summary Judgment pursuant to Rule 56, M.R.Civ.P. On June 5, 2003, the District Court granted both Defendants' Motions for Summary Judgment. It is from this Order that Blain appeals. We affirm.

## BACKGROUND

¶2 On March 13, 2000, Gary Everhard (Everhard) and Robert Aafedt (Aafedt) were employed by Stillwater Mining Company (SMC). Everhard was the brakeman and Aafedt was the driver of a mining locomotive used to transport cars of ore in the mine. On the date in question, the men moved eight ore cars by train from the 5000 West Portal to the 7800 Crosscut in the mine. Aafedt solely controlled the train and usually had an unrestricted view of the entire length of the train. At the 7800 Crosscut on the mainline, Aafedt drove the cars past the switch until the locomotive was even with it when he stopped the train. Everhard then exited the locomotive at the switch while Aafedt backed up the locomotive until the last ore car cleared the switch. Everhard then gave Aafedt a signal with his headlamp to stop the locomotive when all the cars had crossed the switch. Everhard threw the switch from the mainline to the 7800 Crosscut and signaled Aafedt again with his headlamp indicating that he had thrown the switch and Aafedt could proceed to push the ore cars off the mainline into

2

the crosscut.

¶3 After Everhard gave the signal to go forward, Aafedt testified that he made a conscious decision to put the locomotive into forward gear and applied the throttle to make the train go forward. He honked the horn as procedure dictated. Aafedt also testified that he did not know Everhard's location when he moved the train forward, but moved the train forward because Everhard had signaled him to do so. He testified that only if he had seen Everhard standing by the switch could he know that Everhard was in a position of safety. Yet, Aafedt testified that even though he had the ability to stop the train, he decided to continue to move it forward to clear the mainline while not knowing Everhard's location.

¶4 SMC safety procedure dictates that the switchman, Everhard in this case, is supposed to stand in the vicinity of the switch after giving the signal to the driver to proceed forward until the locomotive reaches the switch.

¶5 Arriving at the switch, Aafedt noticed that Everhard was not there and exited the locomotive to look for him. He called dispatch to report that the train had cleared the mainline, however, when outside the locomotive he noticed that it had not completely cleared. As a safety precaution, he got back in to move the train another two feet so that the rear end of the locomotive indeed cleared the mainline. It was standard procedure to never leave equipment on the mainline, because other trains used it simultaneously and to leave equipment on the mainline posed a risk of a collision with another train.

¶6 At that point, Aafedt noticed that the furthest ore car raised up off the track. He stopped the locomotive, walked towards the ore car and found Everhard's miner's hat at the

fourth car past the locomotive. As he arrived at the last car, Aafedt found Everhard underneath the ore car, obviously deceased. From the time he began moving the train forward to the time he found Everhard, he did not know Everhard's location.

¶7 The Mine Safety and Health Administration conducted an investigation of the accident. Due to the curvature of the tracks, the report stated that the locomotive driver temporarily could not see any hazards in front of the cars, and when he was within thirty feet of the switch he did not see the brakeman. Failing to stop there, the locomotive driver traveled approximately sixty feet without knowing the location of his brakeman. The report concluded that the following factors contributed to the accident: (1) management's failure to implement work procedure that required the locomotive driver to be in communication or visual contact with the brakeman while pushing rail cars; and (2) failure of the locomotive driver to immediately stop the train when he realized that his brakeman was not waiting for him at the switch.

¶8 On October 22, 2001, Blain brought this action in the Thirteenth Judicial District Court to recover damages for the death of her father, pursuant to § 39-71-413, MCA (1999). On July 5, 2002, pursuant to Rule 56(c), M.R.Civ.P., SMC filed a Motion for Summary Judgment. On August 5, 2002, Aafedt also filed a Motion for Summary Judgment. After fully considering the record and arguments of all parties, the court granted the Defendants' Motions for Summary Judgment. It is from this Order that Blain appeals.

¶9 We restate the issue on appeal:

¶10 Did the District Court err when it granted summary judgment to SMC and Aafedt

4

based on its conclusion that there was a complete absence of any facts from which it could be proven or inferred by a jury that Aafedt's actions were malicious under § 39-71-413, MCA (1999)?

## STANDARD OF REVIEW

¶11    Our review of a summary judgment order is *de novo.*  Summary judgment is an extreme remedy and is proper only when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law.  *See* Rule 56, M.R.Civ.P.  The initial burden is on the moving party to establish that there is no genuine issue of material fact; and once met, the burden shifts to the party opposing the motion to establish otherwise. *Erker v. Kester*, 1999 MT 231, ¶ 17, 296 Mont. 123, ¶ 17, 988 P.2d 1221, ¶ 17. Furthermore, on review, all reasonable inferences that might be drawn from the offered evidence should be drawn in favor of the party opposing summary judgment.  *Erker*, ¶ 17. However, once the court determines that genuine issues of fact do not exist, "the court must then determine whether the moving party is entitled to judgment as a matter of law."  We review this legal conclusion to determine whether the court erred.  *Wages v. First Nat. Ins. Co. of America*, 2003 MT 309, ¶ 9, 318 Mont. 232, ¶ 9, 79 P.3d 1095, ¶ 9.

## DISCUSSION

¶12    Did the District Court err when it granted summary judgment to SMC and Aafedt based on its conclusion that there was a complete absence of any facts from which it could be proven or inferred by a jury that Aafedt's actions were malicious under § 39-71-413, MCA (1999)?

5

¶13 Section 39-71-413, MCA, provides the exception to workers' compensation exclusivity and immunity from tort liability for employers and co-workers for injuries and death occuring within the course and scope of employment. This statute, as it read at the time of this incident, stated in relevant part:

> [i]f an employee receives an injury while performing the duties of his employment and the injury or injuries so received by the employee are caused by the *intentional and malicious act or omission* of a servant or employee of his employer, then the employee or in case of his death his heirs or personal representatives shall, in addition to the right to receive compensation under the Workers' Compensation Act, have a right to prosecute any cause of action he may have for damages against the servants or employees of his employer causing the injury.

Section 39-71-413, MCA (1999) (emphasis added).

¶14 In *Sherner v. Conoco, Inc.*, 2000 MT 50, 298 Mont. 401, 995 P.2d 990, we took the opportunity to clarify the definition of "intentional and malicious act or omission" within the context of § 39-71-413, MCA (1999). In interpreting these terms, we stated that we were guided by the plain language of the statute as well as by the definition of "actual malice" as described in § 27-1-221, MCA. *Sherner*, ¶¶ 36-38. Under this 1999 statute, a plaintiff must pass the conjunctive test of proving that his employer or co-employee intentionally *and* maliciously acted or omitted to act. *See* § 39-71-413, MCA (1999).

¶15 In this case, the District Court determined that Aafedt did intentionally act by moving the train without seeing Everhard. It found that "[i]f intention is defined without regard to the consequences of an act, then Aafedt's acts meet the *Sherner* definition of intent." The court also stated that the facts of this case did not reflect Aafedt having an intent to harm Everhard when he moved the train.

6

¶16     Next, the court pointed out that the second part of the inquiry requires Blain to show that Everhard suffered an injury caused by a malicious act or omission by Aafedt or SMC in accordance with the definition of "actual malice" found in § 27-1-221(2), MCA (1999). The court determined from the facts of the case that it could not find actual malice by either defendant.

¶17     The District Court stated that to make a finding of actual malice, Aafedt would have had to know of facts creating a high probability of injury to Everhard. In responding to Everhard's signal to proceed, the court concluded that Aafedt was simply performing his job of moving the train forward and consequently, under these facts, could not be acting in a manner that created a high probability of injury to Everhard. In finding that Aafedt's and SMC's acts were not malicious, the court stated that Aafedt did not move the train with conscious disregard, intentional disregard or indifference to the high probability of injury to Everhard, as he had every reason to believe that Everhard was in a position of safety by the fact that he signaled Aafedt to move the locomotive forward. The District Court concluded that Blain may have satisfied the "intentional" prong of the test, however, she could not establish that Aafedt deliberately proceeded to act in conscious or intentional disregard or even indifference to the high probability of injury to Everhard. Thus, it granted summary judgment to SMC and Aafedt.

¶18     At the outset, we conclude that Blain misread the District Court's Order regarding Aafedt's actions meeting the intentional prong. On appeal, Blain argues that the District Court ignored the essence of *Sherner* and alleges that the District Court adopted the "intent

7

to harm" approach–one that *Sherner* abrogated–when it concluded that Aafedt intended to move the train but the facts of this case "do not show an intent to harm Everhard by Aafedt when he moved the train." Thus, she asserts that the District Court erred when it concluded that Everhard was not killed by an intentional act. We conclude that a fair reading of the District Court's entire order indicates that the court was convinced that Aafedt did, in fact, meet the definition of intention as described in *Sherner*. In any event, our review of the record indicates that Aafedt's conduct was "intentional" under the *Sherner* standard.

¶19     Blain next contends that a reasonable person may conclude that Aafedt did, in fact, deliberately proceed to act in conscious disregard of, or with indifference to, the high probability of injury to Everhard, thus meeting the definition of actual malice. As such, she maintains that there were genuine issues of material fact, and the court erred in granting summary judgment. She bases her argument upon the following facts: (1) Aafedt's knowledge that the brakeman was supposed to be in close proximity to the switch; (2) Everhard, as an experienced brakeman, had always done so; (3) this measure was proscribed for safety, that only if Aafedt saw Everhard standing at the switch would Aafedt know that Everhard was in a position of safety before continuing to drive the train forward; (4) this knowledge was critical to prevent an accident; and (5) Aafedt's conscious decision to move the train forward even though he had already observed that Everhard was not standing at the switch prior to the locomotive reaching the switch.

¶20     Blain relies on *Wolf v. Williamson* (1995), 269 Mont. 397, 889 P.2d 1177, to argue that she is entitled to the inference of Aafedt's state of mind, and Aafedt's state of mind as

8

to the foreseeability of injury to Everhard is a question of fact for the jury. *Kolar v. Bergo* (1996), 280 Mont. 262, 266-67, 929 P.2d 867, 869-70. Blain asserts that summary judgment should not be used as a substitute for a trial if factual controversy exists, and such controversy exists here.

¶21    To rebut Blain's argument, SMC and Aafedt point out that the evidence she presented pertained to establishing intention, not malice, and the District Court granted summary judgment based upon the lack of evidence of malicious conduct. The Defendants assert that there is no evidence that there was a high probability of injury at all, much less that Aafedt acted indifferently to it. In maintaining that the most Blain can prove is Aafedt's negligence, SMC and Aafedt underscore that "allegations of negligence, no matter how wanton, are insufficient to avoid the exclusive remedy of the Workers Compensation Act." *Sherner*, ¶ 32 (quoting *Schmidt v. State* (1997), 286 Mont. 98, 105, 951 P.2d 23, 28). The Defendants maintain that the District Court correctly concluded that summary judgment was proper. We agree.

¶22    *Sherner* requires a plaintiff to meet both prongs of § 39-17-413, MCA (1999), intentional and malicious act or omission, in order to avoid the Workers' Compensation exclusivity doctrine. As previously stated, the District Court concluded that Aafedt's conduct was intentional as we have defined in *Sherner*. The determinative question in this case is whether Everhard's death was caused by a malicious act or omission by SMC or Aafedt in accordance with the definition of actual malice found in § 27-1-221(2), MCA (1999). Section 27-1-221(2), MCA (1999), provides:

9

[a] defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and: (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

¶23 We agree with the District Court that a reasonable person could not conclude that Aafedt intentionally disregarded facts that created a high probability of injury to Everhard. Once Everhard signaled Aafedt to move the locomotive forward, Aafedt acted as a reasonable person responding to the signaling procedure established by SMC. Upon receiving Everhard's signal to proceed, Aafedt was reasonable to assume that Everhard was in a position of safety and would remain so. This procedure has been successful in preventing injury in the past and there was no reason for Aafedt to believe it would not on this occasion. Both Everhard and Aafedt were aware of this procedure established by SMC and acted accordingly. Although safer procedures may certainly be required in the future, we do not think Aafedt's conduct can be characterized as malicious under the circumstances. Aafedt's conduct was in stark contrast to the conduct of management in *Sherner* who intentionally allowed their employee to enter a space when it was known that hydrogen sulfide gas was present.

¶24 We agree with the District Court that, as a matter of law, it cannot be said that Aafedt deliberately proceeded to act in conscious or intentional disregard or even indifference to the high probability of injury to Everhard pursuant to the definition of actual malice. *See* § 27-1-221(2), MCA (1999). Absent meeting the definition of actual malice, Blain could not overcome the exclusive remedy rule under the Workers' Compensation Act and her claim

10

fails as a matter of law.  Accordingly, summary judgment in favor of SMC and Aafedt was

proper.  We affirm.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER