No. 03-636

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 187

MARK and DONNA OLSZEWSKI,

          Plaintiffs and Appellants,

   v.

BMC WEST CORPORATION, d/b/a Poulsens and
d/b/a Intermountain Truss, and BLAKE MAYNARD,

          Defendants and Respondents.

APPEAL FROM:    District Court of the Eighth Judicial District,
                   In and for the County of Cascade, Cause No. BDV 02-413,
                   The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

              Richard J. Martin, Linnell, Newhall, Martin & Schulke, P.C., Great Falls,
              Montana

       For Respondents:

              Scott G. Gratton, Kelly J. C. Gallinger, Brown Law Firm, P.C., Billings,
              Montana

                        Submitted on Briefs:  February 10, 2004

                                Decided:   July 13, 2004

Filed:

_____
                            Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Mark and Donna Olszewski (Mark and Donna) appeal from an order of the Eighth Judicial District Court, Cascade County, granting summary judgment to BMC West Corporation (BMC) and Blake Maynard (Blake). We affirm.

¶2 We address the following issue on appeal: Did the District Court err in concluding there is no genuine issue of material fact that BMC's and Blake's acts related to Mark's injury were not intentional and malicious as defined by applicable law?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶3 BMC is the parent company of Intermountain Truss and Poulsens. Intermountain Truss manufactures trusses and is based in Helena. Poulsens is a hardware store and lumber yard in Great Falls. Intermountain Truss uses special equipment to transport large shipments of trusses to its customers. However, previous to the incident at issue here, Intermountain Truss would semi-regularly deliver trusses to Poulsens for resale in order to accommodate relatively smaller purchases.

¶4 In August 2000, Mark and Blake were employees of Poulsens. Blake was an assistant foreman and was Mark's immediate supervisor at the time. On or about August 7, a customer purchased roof trusses from Poulsens that were to be delivered to a construction site. Blake began using a forklift to load the 40' roof trusses onto a truck for delivery. The truss load weighed approximately one ton. Because the bed of the truck was only 22' long, he placed beams under the trusses to extend the length of the truck bed to support the trusses. This procedure was one of two methods routinely used at Poulsens to load and deliver trusses. After the trusses were loaded onto the truck, it became apparent the beams were not placed in a way that would effectively support the trusses. At about this time, Mark began

2

assisting Blake. Blake used one tine of the forklift to lift the end of the truss load hanging off the back of the truck. Mark then reached under the load and attempted to adjust a beam. The movement of the beam caused the trusses to shift and fall off the forklift and onto Mark.

¶5     Mark suffered severe injuries. As an employee covered by worker's compensation, Mark received payment for medical expenses, disability, and occupational retraining since he is no longer able to perform heavy labor. Poulsens' management conducted an investigation into the incident. The investigation determined the trusses fell off the forklift in part because Blake positioned the trusses toward the tip of a single fork tine instead of up against the mast of the forklift. As a result of this accident, Intermountain Truss no longer delivers trusses to Poulsens but instead delivers both large and small orders directly to customers.

¶6     Mark brought suit against BMC and Blake asserting that the circumstances of his injury fall under the intentional act exception to the Workers' Compensation Act as provided for by § 39-71-413, MCA (1999). Specifically, Mark argued that by requiring employees to load the long trusses on short trucks that are not designed to haul trusses, BMC and Blake intentionally caused his injury. Donna brought a loss of consortium suit based on Mark's injury.

¶7     BMC and Blake moved for summary judgment asserting their actions did not meet the intentional act requirements of § 39-71-413, MCA (1999), as articulated in *Sherner v. Conoco, Inc.*, 2000 MT 50, 298 Mont. 401, 995 P.2d 990. The District Court agreed and granted the motion. Mark and Donna appeal.

## II. DISCUSSION

¶8 **Did the District Court err in concluding there is no genuine issue of material fact that BMC's and Blake's acts related to Mark's injury were not intentional and malicious as defined by applicable law?**

¶9 We review an appeal from a trial court's grant of summary judgment *de novo*. *Dobrocke v. City of Columbia Falls*, 2000 MT 179, ¶ 19, 300 Mont. 348, ¶ 19, 8 P.3d 71, ¶ 19. Summary judgment is proper if there are no genuine issues of material fact when the facts are viewed in a light most favorable to the nonmoving party. *Dobrocke*, ¶ 20. We note here that for purposes of the summary judgment motion regarding BMC's and Blake's actions, any contributory negligence on Mark's part is irrelevant. Further, as agreed by the parties, Donna's claim is derivative of and dependant on Mark's claim. *Maney v. Louisiana Pac. Corp.*, 2000 MT 366, ¶ 20, 303 Mont. 398, ¶ 20, 15 P.3d 962, ¶ 20 (Act's exclusivity provision bars any third party action against an employer for compensation claimed "as a result of" or "concerning" an employee's injury or death). Finally, the 2001 legislative amendments to § 39-71-413, MCA, do not apply to this case. Rather, the facts of this case are governed by § 39-71-413, MCA (1999), the previous version which we interpreted in *Sherner*.

¶10 Mark asserts the District Court erred because there is a genuine issue of material fact regarding whether BMC and Blake acted intentionally and maliciously by requiring workers to routinely load trusses in known, unsafe conditions without providing adequate equipment, safety training or supervision. Mark argues the only reason trusses were delivered to Poulsens was to save costs on using Intermountain Truss' expensive delivery equipment and that this focus on costs rather than safety shows that BMC and its subsidiaries intentionally and maliciously disregarded safety issues.

¶11 Specifically, Mark asserts BMC and Blake violated OSHA standards which

4

demonstrate their acts were intentional and malicious. He argues that OSHA requires forklift training specific to the type of load to be carried and that Poulsens failed to provide this training. He also argues that OSHA standards require that protection be provided from falling objects and that this is impossible given that 40' loads were routinely being placed on 22' trucks. Mark also asserts Blake violated OSHA by in effect asking him to get under a loaded forklift, creating an unstable, off-center load on the forklift, and failing to engage the load as far as possible on the forklift.

¶12    BMC and Blake assert the District Court properly determined there was no genuine issue of material fact that their actions did not meet the *Sherner* standard. They further assert there were no OSHA violations and that placing 40' trusses on 22' foot trucks is within length regulations.

¶13    We agree with the District Court. The Workers' Compensation Act prohibits an employee from bringing suit against an employer or fellow employee for injuries sustained during the course of employment. The Act gives employers and fellow employees immunity from suit in exchange for assuring that employees are given compensation for work related injuries. *Sherner*, ¶ 17.

¶14    There was an exception to this immunity as codified at § 39-71-413, MCA (1999), for an "intentional and malicious act or omission" committed by an employer or fellow employee that injures an employee. In *Sherner*, we held that the definition of malice codified at § 27-1-221(2), MCA, applies to § 39-71-413, MCA (1999). Therefore, in order to meet the intentional act exception and proceed with a tort claim against an employer, an employee must demonstrate that the employer or fellow employee had knowledge of facts or intentionally disregarded facts that create a high probability of injury to the plaintiff and:

5

(a) deliberately proceeded to act in a conscious or intentional disregard of the high probability of injury to the plaintiff, or (b) deliberately proceeded to act with indifference to the high probability of injury to the plaintiff. *Sherner*, ¶ 37.

¶15 In *Sherner*, two separate problems occurred at a gas refinery both of which required repair. In order to prevent toxic gases from flowing into the areas to be repaired and thereby injuring the repair workers, parts of the refinery had to be shut down. Although a shutdown was initiated, it did not successfully prevent toxic gas from being present in the work area. This failure was known to the employees in charge of managing the safety of the repair work. Despite this fact, an employee was still sent in to conduct repair work. He suffered injuries from the gas. We reversed the trial court's grant of summary judgment concluding there was a genuine issue of material fact. The employee was required to perform a task even though an injury was essentially certain to occur. Thus, there was a genuine issue of material fact whether the employer knew of and intentionally disregarded a high probability of injury to the employee. This is the threshold inquiry required by the definition of actual malice at § 27-1-221(2), MCA.

¶16 In contrast, in *Blain v. Stillwater Mining Co.*, 2004 MT 141, 321 Mont. 403, 92 P.3d 4, a mine employee was killed by an underground train hauling ore. The fellow employee driving the train testified that he only moved the train forward because the later deceased employee signaled with his headlamp that it was proper to move the train. The employee driving the train then continued to move it when he discovered the train was blocking an intersecting track even though he could no longer see the employee that had originally signaled him. Because there was no requirement to stop the train if his partner was not in sight and because it was not highly probable that an injury would occur just because the

6

employee was not within sight, we affirmed the trial court's grant of summary judgment holding that there was no material fact shown that the fellow employee acted with malice. The conclusion in *Blain* was that there can be no genuine issue of material fact regarding a malicious act or omission when the employer or a fellow employee does not actually know there exists a high probability that another employee will be injured. *Blain*, ¶ 6.

¶17 The facts of the case here are more analogous to *Blain*. Regarding Blake, the subsequent investigation conducted by Poulsens found Blake's acts were likely negligent because he failed to properly use the forklift to lift the trusses when he did not place the trusses against the mast of the forklift. However, despite this carelessness, there is no evidence Blake actually knew the trusses would fall on Mark when Mark moved the beam, nor was Blake aware the trusses would probably fall. Likewise, there is no evidence Blake intentionally disregarded a high probability of injury to Mark. That is, he could perhaps foresee that it was possible the trusses would fall, but there is no indication he knew they would probably fall. Therefore, Blake's actions do not meet the threshold under § 27-1-221(2), MCA, because he was not aware of facts that would create a high probability of injury to Mark. In addition, in his deposition, Mark himself specifically testified that he did not believe Blake intentionally tried to hurt him and that they mutually decided the beams needed to be repositioned. Again, while Blake may have been aware that picking up the trusses with a tine of the forklift would create a potentially dangerous situation, there is simply no issue of fact regarding whether Blake deliberately proceeded to act with disregard or indifference to a high probability that Mark would be injured. He did not.

¶18 Regarding BMC, Intermountain Truss and Poulsens saving money by cutting corners, this does not show malice as defined in *Sherner*. In addition, the fact that trusses are no

7

longer delivered to Poulsens also does not show malice. Mark's argument focuses on the trusses in that he argues the routine loading of trusses on inadequate equipment with inadequate training, as demonstrated by potential OSHA violations, created a dangerous situation which Poulsens intentionally disregarded.

¶19     However, there is no evidence that by allowing the routine loading of long trusses on short trucks BMC knew its employees would be injured. The malice standard requires more than a showing that the job in question involves a known risk of injury or a dangerous situation. The standard requires that the employer actually knew of, or intentionally disregarded, a probability of injury that is higher than that caused by gross negligence. Here, there is simply no evidence the companies knew their employees would actually be injured by a routine which was usually performed without incident. In addition, there is no evidence BMC intentionally disregarded a high probability of injury. Poulsens did conduct regular safety courses. These courses included instruction and certification on how to use a forklift and Mark admitted that he took one of those courses. The courses focused on loads to be carried, load stability, load manipulation, load stacking and handling off-center loads. As the District Court stated, BMC was aware of the danger of lifting any type of load with a forklift and it took steps to educate its employees on how to safely deal with these types of situations.

¶20     Mark argues Poulsens was required by OSHA regulations to specifically instruct on loading trusses. BMC argues there is no specific requirement and that there is no way it can address every type of material that may be loaded with a forklift. This disagreement does not create a genuine issue of material fact. Again, even assuming BMC was negligent in its safety instruction, Mark's allegation does not create an issue of fact that BMC actually knew

8

there was a high probability its employees would be injured when loading trusses onto a truck with a forklift. Therefore, the District Court properly determined BMC, Poulsens, Intermountain Truss, and Blake did not maliciously act, or maliciously fail to act, in such a way as to injure Mark.

### III. CONCLUSION

¶21 The District Court correctly determined Mark's accident does not meet the requirements of the *Sherner* exception. Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER